1997-NMCA-067

943 P.2d 1338

**Gracie L. BERNAL and Joshua L. Nieto, a minor, by and through his mother and next friend, Gracie L. Bernal, Plaintiffs–Appellants,**

v.

**Della NIETO and Melissa Nieto, a minor, Defendants–Appellees.**

No. 17015.

Court of Appeals of New Mexico.

July 10, 1997.

**622**

Pedro P. Palacios, Las Cruces, for Plaintiffs–Appellants.

Douglas R. Driggers, Las Cruces, for Defendants–Appellees.

## OPINION

FLORES, Judge.

1. Plaintiffs–Appellants Gracie Bernal and her minor son, Joshua Nieto (Appellants), appeal from the trial court's order dismissing their amended petition for declaratory judgment and denying their motion for summary judgment. The issue raised on appeal is whether the trial court erred in ruling that a divorced spouse could divest a portion of his minor child's interest in the proceeds of an insurance policy by adding other beneficiaries to the policy. Deciding that the court erred in this respect, we reverse.

## I. FACTUAL AND PROCEDURAL BACKGROUND

2. Gracie Bernal (Gracie) is the first wife of David Nieto, deceased (David). Joshua Nieto (Joshua) is the son born of the marriage of Gracie and David. Defendant–Appellee Della Nieto (Della) is the second wife of David. Defendant–Appellee, Melissa Nieto (Melissa), is the daughter born of the marriage of Della and David. Della was married to David at the time of his death.

3. Gracie and David were married on May 5, 1982, and divorced on June 30, 1988. At the time of the divorce, Joshua was four years old. Gracie and David appeared pro se in the divorce proceeding, and entered into a Marital Settlement Agreement (MSA), which the record and briefs reflect was drafted by David. The MSA, under the heading of "8. OTHER OBLIGATIONS" provided that: "Husband agrees to keep his life insured with the wife, or at the husband's option, the minor child, as beneficiaries of said life insurance, until such time [as] the child becomes eighteen." The MSA further provided that a modification of any of the provisions "shall be effective only if made in writing and executed with the same formality as [the MSA]."

4. At the time of the execution of the MSA and the entry of the divorce decree, there existed one life insurance policy, Policy W–115, on the life of David. This life insurance policy, in the amount of $43,000, was held with Provident Life Insurance Company (Provident).

5. On September 18, 1989, David, subsequent to his marriage to Della, executed a change of beneficiary to the life insurance policy, naming Joshua and Della as beneficiaries. Thereafter, on February 9, 1994, David executed another change of beneficiaries naming Joshua, Della, and Melissa as beneficiaries of the life insurance policy. David passed away thereafter. Gracie and Joshua were not informed of the changes of beneficiaries, and first became aware of the changes after the claim for benefits was made by Della.

6. Appellants filed a petition for Declaratory Judgment to require Provident to pay all of the life insurance proceeds due and payable on Policy W–115 to them. By agreement of the parties, the proceeds of this life insurance policy were paid into the Court Registry. Subsequent to the deposit of the life insurance policy proceeds with the court, Provident was dismissed from the case, and it is not a party to this appeal. However, Della and Melissa responded to the petition, claiming that they were each entitled to one-third of the net proceeds on the life insurance policy pursuant to the two different changes of beneficiaries executed by David

prior to his death. From an adverse ruling of the trial court below holding that Joshua, Della, and Melissa were each entitled to one-third of the proceeds of the policy, Gracie and Joshua appeal.

## II. *DISCUSSION*

### A. Procedural Issue Raised by Appellees

▮ 7. Before addressing the issue raised by Appellants in this appeal, we turn our attention to a question raised by Appellees in their answer brief: Whether Appellants have complied with Rule 12–213(A)(4) NMRA 1997. More specifically, Appellees argue that we should not decide the issue raised by Appellants on the merits, but instead should affirm the trial court because Appellants have failed to specifically attack any of the "findings" made by the trial court. We disagree with Appellees' position.

▮ 8. We agree with Appellees that generally Appellants are bound by findings of fact not specifically attacked in the brief. *Maloof v. San Juan County Valuation Protests Bd.*, 114 N.M. 755, 759, 845 P.2d 849, 853 (Ct.App.1992). Here, however, there were no findings of fact as such to attack. The parties below agreed to a consolidated pre-trial order essentially stipulating to the facts. Further, the trial court's final order itself states "the parties having agreed that no testimony was necessary because the matters to be decided were issues of law for the Court." Although the trial court's final order does state that the court "FINDS as follows:", what comes after are three legal conclusions disposing of the case: (1) Appellants denied relief and case dismissed with prejudice; (2) proceeds of the life insurance policy distributed in three equal shares in accordance with the named beneficiaries, and (3) Appellants' motion for summary judgment denied. The trial court's final order then goes on to recite each of these three conclusions almost verbatim in its decretal clause. It is this order that Appellants challenge on appeal.

▮ 9. The law in this jurisdiction has long been that no findings of fact are required on entry of summary judgment. *Wil-*

*son v. Albuquerque Bd. of Realtors*, 81 N.M. 657, 472 P.2d 371 (1970), *overruled on other grounds by Garrett v. Nissen Corp.*, 84 N.M. 16, 18, 498 P.2d 1359, 1361 (1972). Thus, the requirement of Rule 12–213(A)(4) is not applicable in an appeal from a summary adjudication. Here, we determine that, because the rulings by the trial court were matters of law, there were no factual findings that Appellants were required to specifically attack, nor were Appellants required to raise questions as to the sufficiency of the evidence. Accordingly, we address the issue raised by Appellants, which is a legal issue, on the merits.

### B. Legal Issue Raised by Appellants

▮ 10. On appeal, Appellants basically argue that the trial court erred in upholding the change in beneficiaries as opposed to the beneficiary provisions of the MSA contained in the divorce decree. We agree.

▮ 11. The MSA states clearly that Gracie and/or Joshua are to be the beneficiaries of a life insurance policy. As previously noted, Insurance Policy W–115 was the only life insurance policy on the life of David both at the time of the execution of the MSA and at the time of David's death. The MSA was a contract between Gracie and David. The general rule in New Mexico is that "[i]n interpreting a contract uncertainties must be construed most strongly against the party drafting the contract," in this case, David. *Spinoso v. Rio Rancho Estates, Inc.*, 96 N.M. 5, 8, 626 P.2d 1307, 1310 (Ct.App.1981). We therefore determine the words "keep his life insured" should be interpreted to mean keeping David's life insured with the only life insurance he had in existence at that time, Policy W–115. That is the only policy ever purchased by David during his lifetime.

12. The MSA explicitly states that David "agrees to *keep* his life insured ...," which language we decide implies that the reference to life insurance related to Insurance Policy W–115, already in existence. (Emphasis added.) The MSA's failure to specifically identify the life insurance policy that was to be kept in effect is not dispositive. We have already concluded that the MSA is

best interpreted to refer to the life insurance policy (Policy W–115) in effect at the time of the execution of the MSA and the entry of the divorce decree. Appellees have pointed to no evidence to the contrary. *See Herrington v. Boatright*, 633 S.W.2d 781, 783 (Tenn. Ct.App.1982) (decree's failure to identify policies irrelevant to outcome; language requiring that policies be kept in effect included all policies in effect at time of divorce).

13. Further, in this case, we adopt the majority rule expressed in *Torchia v. Torchia*, 346 Pa.Super. 229, 499 A.2d 581 (1985), that where a divorce decree or property settlement agreement requires a party to keep a life insurance policy in effect and to retain a specific beneficiary, that beneficiary has a vested interest in the insurance policy proceeds and may assert that vested interest. *Id.* at 583–84; *see also Perry v. Perry*, 484 S.W.2d 257, 258–59 (Mo.1972) (an insured's contract, incident to divorce, to make his minor children beneficiaries under an insurance policy constitutes an equitable assignment of the policy for the children's benefit and gives them a vested right to the proceeds of said policy).

14. In this case, David, by changing beneficiaries, divested Joshua of his right to one hundred percent of the life insurance benefits and left him with only a one-third interest. In this regard, Appellees take the position that *Torchia* is distinguishable and argue that the MSA in the instant case does not require that Joshua be kept as the sole beneficiary; that the MSA does not prohibit David from adding other beneficiaries; and that Joshua was not completely divested of his interest. We recognize that the language of the agreements in *Herrington* and *Torchia* were more specific than the language in the MSA in this appeal. However, having construed the language in the MSA against the drafter, David, to refer to the only policy in existence at the time of the divorce, we do not agree with Appellees that *Torchia* is significantly different from this case. To read and interpret the MSA in this case as Appellees suggest would essentially allow Joshua's interest in the insurance policy to be diluted to virtually nothing at the option of David.

15. Moreover, the MSA provided that any changes to the provisions were valid "only if made in writing and executed with the same formality" as the original MSA. This was not done with regard to the addition of beneficiaries. We do not believe that David could legally alter or amend the MSA unilaterally and without written agreement of the parties to the MSA. In sum, we hold that the MSA created a vested interest in Insurance Policy W–115 in favor of Joshua, which interest should be protected against later-named beneficiaries who have no superior right to such proceeds. *See Torchia*, 499 A.2d at 583.

16. As additional support of our holding, our Supreme Court's reasoning in *Ruggles v. Ruggles*, 116 N.M. 52, 860 P.2d 182 (1993), is applicable to this case. In *Ruggles*, the working spouse elected to work past his retirement date, effectively reducing the value of, or diminishing the total value of his retirement proceeds, to the detriment of the non-working spouse. The Court held that the preferred method of distribution on divorce is that the working spouse must begin to pay the non-working spouse an amount equal to what she was to have received had the working spouse retired timely. The Court found it significant that when bargaining for the provisions of the MSA, the non-working spouse probably relied on the timely retirement of the working spouse. The *Ruggles* Court noted the desirability of severing the interests of the respective spouses at the time of the MSA from contingencies that might arise later, to prevent the "risk of future strife" caused by unilaterally affecting the other's interest.

17. We believe that the reasoning in *Ruggles* buttresses our position in this case that even a partial divestment, i.e., a reduction of Joshua's share in the life insurance proceeds, violates the MSA. Accordingly, following that same reasoning, and extending it to apply to life insurance policies, we construe the MSA as insulating Joshua's interests in Insurance Policy W–115 from any possible future unilateral action that might diminish or extinguish his interest.

Thus, the MSA as executed by David and Gracie left David with no legal right to unilaterally assign any of the proceeds from Insurance Policy W–115 to Della and/or Melissa.

## III.  *CONCLUSION*

18.  We reverse the trial court's Order and remand with instructions that the trial court order the disbursement of the proceeds of Insurance Policy W–115 to Appellants for the benefit of Joshua.  Appellants are awarded their costs on appeal.

19.  **IT IS SO ORDERED.**

APODACA and BUSTAMANTE, JJ., concur.