4 P.3d 670

2000-NMCA-059

**Nancy SCHEIDEL, Respondent–Appellant,**

v.

**Paul Neal SCHEIDEL, Petitioner–Appellee.**

**No. 19,937.**

Court of Appeals of New Mexico.

May 31, 2000.

Michael C. Jordan, Albuquerque, for Appellant.

William Short, Albuquerque, for Appellee.

## OPINION

BUSTAMANTE, Judge.

{1} Brigadier General Paul Neal Scheidel (Husband) appeals from the trial court's order enforcing the terms of a Marital Settlement Agreement (MSA) entered into by Husband and Nancy Scheidel (Wife). The MSA divided Husband's military retirement benefits between the parties and prohibited Husband from taking any voluntary action to reduce Wife's share of those benefits. The MSA also contained an indemnity provision that would require Husband to compensate Wife for reductions in her benefits that

might result from voluntary action by Husband. In the proceedings below, Wife successfully sought indemnity from Husband after Husband waived a portion of his retirement pay. On appeal, Husband argues that the trial court's order violates federal law. Husband further asserts that the trial court's determination that he violated the terms of the MSA, thereby triggering the indemnity provision, was in error. We affirm.

## FACTS AND PROCEDURAL BACKGROUND

{2} Husband and Wife were married on June 3, 1960, while Husband was in the Air Force. Husband retired from the military in 1986. After the parties divorced in 1991, they entered into the MSA at issue, which was incorporated into the court's amended final decree. For the purposes of this appeal, the most significant portions of the agreement provide as follows:

D. Wife is awarded fifty percent (50%) of the community property interest in Husband's military retirement benefits. At the time of execution of this Marital Settlement Agreement, fifty percent (50%) is equal to $1,861.00 monthly.... Wife shall share in all future increases in the military retirement benefits....

(1) Wife's interest in Husband's military retirement pay shall be calculated according to the following formula:

Wife's interest is expressed as one-half of the community interest.

Community interest is two hundred eighty-eight (288) months marriage divided by three hundred (300) months service equals .96 of the amount remaining after Veterans Administration compensation of $259.00 monthly (or the Veterans Administration compensation amount, as the same may change from time to time by government action) is deducted from gross monthly military retirement pay.

Wife's interest is equal to one-half of the community interest, or .96 divided by 2 equals .48 or 48 percent (48%).

. . . .

(4) Husband shall never voluntarily modify his military retirement pay in such a manner as to cause Wife's share to be diminished or reduced. If Husband does so, he will be responsible to pay to Wife the difference in monies she then receives via direct payment and the amount due her as calculated above.

The MSA also provides that Wife shall receive her payments from the Defense Finance and Accounting Service (DFAS), pursuant to a direct payment program established by federal law. *See* 10 U.S.C. § 1408(d)(1)–(2) (1994 & Supp. IV 1998).

{3} At the time of the divorce Husband was 30% disabled, and he received a commensurate amount of disability pay in lieu of retirement benefits. However, Husband suffered worsening heart problems in the years following the divorce. He had a number of strokes, and began taking medication to thin his blood. He also developed serious dental problems. Husband's condition required that he be hospitalized and put on medication to thicken his blood before he could have his dental problems treated. Because the Veterans Administration (VA) provides dental care only to military persons who are completely disabled, Husband applied for a reevaluation, and received a 100% disability rating.

{4} In accordance with federal law, Wife's share of Husband's military pension is based upon Husband's retirement pay, excluding any amounts received from the VA as disability pay. *See* 10 U.S.C. § 1408(a)(4)(B) (1994). Because a military retiree must waive a corresponding amount of retirement pay in order to receive veterans' disability benefits, *see* 38 U.S.C. § 5305 (1994), the amount received monthly by Wife as her share of the retirement benefits decreased dramatically after Husband's disability rating increased. Based upon the indemnity provision in the MSA, Wife therefore filed a motion for order to show cause, seeking an order forcing Husband to compensate her for the reduction in benefits. The trial court determined that Husband had violated the terms of the MSA by applying for and receiving a higher disability rating, and required Husband to indemnify Wife for her losses. This appeal followed.

## DISCUSSION

### 1. Federal Preemption

■ {5} Husband asserts that the trial court's order is directly at odds with the Uniformed Services Former Spouses' Protection Act, 10 U.S.C. § 1408 (the USFSPA), and the Supreme Court's ruling in *Mansell v. Mansell,* 490 U.S. 581, 109 S.Ct. 2023, 104 L.Ed.2d 675 (1989).

{6} Enacted in response to *McCarty v. McCarty,* 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981), the USFSPA eliminated federal preemption in regard to the post-marital disposition of military pensions. *See Walentowski v. Walentowski,* 100 N.M. 484, 486, 672 P.2d 657, 659 (1983). Specifically, the USFSPA authorizes state courts to treat "disposable retired pay ... as property of the [military] member and his spouse in accordance with the law of the jurisdiction of such court." 10 U.S.C. § 1408(c)(1) (1994). "[D]isposable retired pay" is defined as "the total monthly retired pay to which a member is entitled," less certain deductions. 10 U.S.C. § 1408(a)(4). Among the amounts that are deducted from the retired pay of the military member are any amounts waived in order to receive disability benefits. *See* 10 U.S.C. § 1408(a)(4)(B). Interpreting these provisions, the Supreme Court held in *Mansell* that disability payments are excluded from the scope of the USFSPA. By extension, the Court concluded that state courts lack the power to treat military retirement pay that has been waived in order to receive disability benefits as property that is divisible upon divorce. *See Mansell,* 490 U.S. at 594–95, 109 S.Ct. 2023.

{7} In reliance upon *Mansell,* Husband contends that the trial court's order, which requires him to compensate Wife for the reduction in benefits that she suffered as a result of the increase in his disability rating, amounts to an impermissible distribution of disability benefits to Wife. We disagree.

{8} Courts in a number of other states have addressed post-judgment waivers of retirement pay in circumstances similar to those presented here. In recognition of the fact that *Mansell* merely prohibits state courts from ordering the division of the military spouse's disability pay, several courts have determined that nothing in *Mansell* or in the USFSPA prohibits them from enforcing indemnity provisions designed to guarantee a minimum monthly income to the non-military spouse. *See, e.g., Abernethy v. Fishkin,* 699 So.2d 235, 239–40 (Fla.1997); *In re Marriage of Strassner,* 895 S.W.2d 614, 617–18 (Mo.Ct.App.1995); *Owen v. Owen,* 14 Va. App. 623, 419 S.E.2d 267, 269–71 (1992). However, these courts have observed that the enforceability of such an indemnity provision depends upon the source of the funds committed in satisfaction of the military spouse's obligation. *See, e.g., Abernethy,* 699 So.2d at 239 (affirming enforcement of settlement agreement because it "did not expressly provide for a division of disability," which, under the USFSPA and *Mansell,* would be invalid). Neither the marital settlement agreement, nor the court order enforcing the relevant portions of that agreement, may require the military spouse to remit disability funds, specifically, to the non-military indemnitee. *See Mansell,* 490 U.S. at 594–95, 109 S.Ct. 2023. However, so long as the military spouse is free to satisfy an indemnity obligation from any source, these courts have ruled that the enforcement of such indemnity provisions does not result in the impermissible division of disability benefits. *See Abernethy,* 699 So.2d at 240; *Strassner,* 895 S.W.2d at 618; *Owen,* 419 S.E.2d at 269–70.

■ {9} We find these cases persuasive. Not only is the rationale analytically sound, but the result is equitable. As this Court has previously noted, one spouse should not be permitted to benefit economically in the division of property from a factor or contingency that could reduce the other spouse's share, if that factor or contingency is within the first party's complete control. *See Irwin v. Irwin,* 121 N.M. 266, 271, 910 P.2d 342, 347 (Ct.App.1995).

{10} We acknowledge that when deciding cases with similar facts, courts in some jurisdictions appear to have reached conclusions contrary to ours. *See, e.g., Ashley v. Ashley,* 337 Ark. 362, 990 S.W.2d 507, 509 (1999); *In re Marriage of Pierce,* 26 Kan.App.2d 236, 982 P.2d 995, 998 (1999); *Ryan v. Ryan,* 257

Neb. 682, 600 N.W.2d 739, 744–45 (1999); *Johnson v. Johnson*, No. 02A01–9901–CV–00015, 1999 WL 713574, at * 3–5 (Tenn.Ct. App.1999), *appeal granted*, Apr. 10, 2000; *Wallace v. Fuller*, 832 S.W.2d 714, 718 (Tex. Ct.App.1992). Upon closer review, however, we find many of these cases distinguishable, and we find that they do not dissuade from our position.

{11} For example, in *In re Marriage of Pierce*, in contrast to this case, the settlement agreement at issue did not specify that the wife was to receive a certain sum of money per month, nor did it preclude the husband from doing anything to alter the amount the wife was to receive. *See* 982 P.2d at 997. As such, the court rightly held that the husband was free to waive his retirement pay in favor of disability benefits and that *Mansell* precluded the trial court from ordering otherwise. *See In re Marriage of Pierce*, 982 P.2d at 998. In several of the other cases, the courts rightly held that settlement agreements or divorce decrees that purported to order a division of the former military spouse's disability benefits violated *Mansell* and the USFSPA. *See Ryan*, 600 N.W.2d at 741–42, 744; *Wallace*, 832 S.W.2d at 718. Finally, at least one of the courts that appears to have reached a conclusion contrary to ours had to distinguish a case from within its jurisdiction—a case with facts more similar to ours—to reach the result it did. *Compare Ashley*, 990 S.W.2d at 508–09 (reversing order that husband remit to former wife certain money that he had waived in order to receive disability benefits), *with Hapney v. Hapney*, 37 Ark.App. 100, 824 S.W.2d 408, 409 (1992) (affirming award of support because the "divorce decree did not purport to award the [wife] a portion of the [husband's] disability benefits").

█ {12} Accordingly, we hold that federal law does not prohibit state courts from enforcing indemnity provisions which ensure the payment of a minimum sum to a non-military spouse as his or her share of a community pension, provided that veterans' disability benefits are not specified as the source of such payments. Husband nonetheless advances three theories in support of his contention that the order entered by the trial court should be reversed.

{13} First, Husband suggests that the trial court's order specifically requires him to indemnify Wife with disability benefit monies. Although we agree with Husband that an order expressly distributing disability benefits would offend the USFSPA, we disagree that the order so provides in this case. Nowhere does the order state that Husband must remit disability benefits directly to Wife. Perhaps Husband relies upon paragraph four of the decree, which indicates that direct payment from the DFAS should be accomplished if possible, because the DFAS handles the distribution of military retirement and disability monies. However, we do not regard this conditional provision as an implicit requirement that Husband utilize disability pay in satisfaction of his obligation to Wife.

{14} Second, Husband contends that the only sources available to fulfill his financial obligations to Wife are his monthly retirement pay and disability benefits, because he has no other income. He thus contends that, as a practical matter, any payment to Wife must come from a protected source—either his disability pay, or his 50% share of the retirement benefits. We are not persuaded that this circumstance renders the trial court's order unenforceable. The critical factor, for the purposes of complying with federal law, is that the court order does not specifically require that disability benefits provide the source of the funds paid to the non-military spouse. *See Abernethy*, 699 So.2d at 240. As stated above, no such explicit allocation of disability benefits was ordered in this case. Additionally, in the likely event that Husband shall pay Wife directly, we note that Husband is free to utilize any other assets, of a non-income-producing nature, to satisfy his obligations. In light of the fact that Husband's increased disability rating has inured to his financial benefit, effectively creating additional income to him at Wife's sole expense, we do not hesitate to suggest that Husband may be required to shuffle assets or rearrange his finances in order to facilitate the satisfaction of his indemnity obligations to Wife.

{15} Finally, Husband argues that the trial court's order violates 38 U.S.C. § 5301(a)

(1994), which protects disability pensions from attachment by creditors. However, enforcement of the indemnity provision does not operate as an impermissible assignment of exempt funds. As stated above, neither the court order nor the MSA require Husband to utilize disability benefits in satisfaction of his obligations to Wife.

{16} In conclusion, although we agree with Husband that *Mansell* prohibits state courts from ordering the division of veterans' disability benefits, we uphold the order of the trial court. We so rule because neither the order nor the MSA that it enforces expressly assign Husband's disability benefits to Wife.

## 2. Enforcement of the MSA

{17} As set forth above, paragraph 3(D)(4) of the MSA prohibits Husband from taking any voluntary action that would reduce Wife's retirement benefit payments, and requires Husband to indemnify Wife in the event of such reduction in her benefits. Applying these provisions, the trial court found that Husband's application for an increased disability rating was voluntary, and in furtherance of his own financial interests. The court further determined that the deterioration in Husband's medical condition did not mitigate the voluntary nature of his conduct. As a result, the court held that Husband had violated paragraph 3(D)(4) of the MSA, and required him to indemnify Wife for her resulting losses.

{18} Husband asserts that the trial court's findings concerning the voluntariness of his actions were in error. We will affirm the trial court's findings if they are supported by substantial evidence. *See Garcia v. Mayer*, 1996–NMCA–061, ¶ 11, 122 N.M. 57, 920 P.2d 522.

{19} First, Husband contends that the life-threatening nature of his medical condition, and his inability to obtain dental care absent VA assistance, rendered his conduct involuntary. We find Black's and Webster's definitions helpful. In pertinent part, both dictionaries indicate that "voluntary" conduct is the product of free will or choice. *See* Black's Law Dictionary 1575 (6th ed.1990); Webster's Third New International Dictionary (unabridged) 2564 (1986). Although Husband's medical needs and his financial interests assuredly motivated him to seek reevaluation of his disability status, we agree with the trial court that these considerations cannot be equated with coercive external forces that compelled Husband to seek a heightened disability rating and to waive his retirement pay in favor of disability benefits. Rather, we conclude that Husband's medical needs and financial interests were precisely the sort of factors that a rational individual would take into account when deciding upon a course of conduct. Therefore, we affirm the trial court's determination that Husband's actions were voluntary, thus triggering his contractual duty to compensate Wife for the losses occasioned thereby.

{20} Taking a slightly different tack, Husband argues that his medical needs were of such exigency that his conduct should be regarded as the product of coercion or duress. Duress, as a principle of contract law, applies defensively against a party attempting to enforce contractual rights. More specifically, it renders contracts voidable which have been tainted by coercive influence in their formation. *See generally* 1 E. Allan Farnsworth, *Farnsworth on Contracts* § 4.9, at 443–46 (2nd ed.1998) [hereinafter Farnsworth]; *cf. First Nat'l Bank v. Sanchez*, 112 N.M. 317, 320, 815 P.2d 613, 616 (1991) (explaining that the doctrine of economic duress, which may be asserted by way of defense to an action to enforce a contractual agreement, is designed to discourage or prevent abuse of power in the bargaining process). The only contract at issue in this case is the MSA. However, we do not understand Husband to suggest that Wife coerced Husband to enter into the MSA. Rather, Husband claims "duress" insofar as his application for an increased disability rating was motivated by pressing health and financial needs. Otherwise stated, Husband asserts that external, coercive forces induced him to breach his contract with Wife. Duress cannot provide any defense or relief under such circumstances. The doctrine fulfills the purpose of policing contract formation: it does not allow a party to avoid his

contractual obligations where external forces have induced him to breach a contract validly formed. *See* 1 Farnsworth § 4.9, at 444–46. We therefore reject Husband's duress argument.

{21} Alternatively, Husband argues that the increase in his disability rating was the result of "government action," such that Wife's entitlement to a portion of Husband's retirement benefits was eliminated. Confronted with this issue below, the trial court concluded that the portion of the MSA which subjects Wife's entitlement to modification in the event of "government action" altering Husband's disability benefits was not implicated in this case. We are persuaded that the trial court's interpretation is correct. In view of the indemnity provision prohibiting Husband from "voluntarily" modifying his retirement pay in a manner that would decrease Wife's share, and also in view of the fact that the MSA expressly entitled Wife to share in any increases in Husband's retirement pay, without reciprocally requiring Wife to suffer decreases, we are persuaded that the "government action" clause was only intended to apply to unilateral government adjustments in the VA disability schedule. Therefore, we reject Husband's argument that the change in his disability rating, and his corresponding waiver of retirement pay, constituted "government action" such that his indemnity obligations might be avoided.

{22}Finally, Husband asserts that the trial court's order amounts to an impermissible award of spousal support or alimony. This argument is based upon Husband's assertion that either his retirement benefits or his disability pay must provide the source of Wife's indemnity payments. Because both the retirement and disability pay are Husband's sole and separate property, Husband reasons that the payments to Wife cannot be regarded as distributions of community property. Therefore, he contends, they can only be classified as periodic spousal support payments. We are unpersuaded by Husband's novel argument. The trial court's order simply enforces Husband's contractual duty to indemnify Wife. *See Herrera v. Herrera,* 1999–NMCA–034, ¶ 9, 126 N.M. 705, 974 P.2d 675 (holding marital settlement agreements are contracts, subject to contract law). Moreover, Wife's right to indemnity has as its theoretical source Husband's military retirement pension, the relevant portion of which accrued during the marriage and is therefore classifiable as community property. *See Walentowski,* 100 N.M. at 486, 672 P.2d at 659. The enforcement of such a contractual duty, particularly a contractual duty having at its origin a guarantee to preserve Wife's share of a community asset, cannot be construed as an award of alimony.

## CONCLUSION

{23} Based on the foregoing discussion, we affirm the trial court's enforcement of the MSA. The parties shall bear their respective costs and attorney fees.

{24} **IT IS SO ORDERED.**

PICKARD, C.J., and ARMIJO, J., concur.