2006-NMCA-112

142 P.3d 971

**Carolyn PALMER, Petitioner–Appellee,**

v.

**Darwin L. PALMER and Sue Palmer, Respondents–Appellants.**

No. 24,869.

Court of Appeals of New Mexico.

July 31, 2006.

Martin E. Threet and Associates, Martin E. Threet, Albuquerque, NM, for Appellee.

Christal K. Grisham, Sun Valley, CA, for Appellants.

## OPINION

SUTIN, Judge.

{1} In this cause, a motion for rehearing having been filed by Appellants, and consideration having been had by all of the panel members of the original panel, it is ordered that the motion for rehearing is hereby denied. The opinion filed in this case on June 27, 2006, is withdrawn and the following opinion is substituted in its place.

{2} The parties' marital settlement agreement divided Husband's retirement benefits between himself and Wife, but was silent as to survivor benefits. When Husband retired, he designated a new wife as the sole beneficiary of the survivor benefits, thereby causing a reduction in Wife's retirement benefits. Wife sought to enforce the final decree to obtain a division of survivor benefits between herself and Husband. The district court entered an order awarding the benefits sought by Wife. This case requires us to determine whether the district court had jurisdiction to award the benefits sought by Wife. We hold that it did. We also hold that, by entering into a stipulated order, Husband waived his argument that Wife failed to state a claim for relief. We remand for a final determination of attorney fees.

## BACKGROUND

{3} While Husband, Darwin Palmer, and Wife, Carolyn Palmer, were married, Hus-

band worked for the federal civil service and earned retirement benefits. The federal agency that administers Husband's retirement benefits is called the Office of Personnel Management (OPM). Husband and Wife were divorced in 1985. Their marital settlement agreement (the settlement agreement), which was incorporated into the final decree of dissolution of marriage (the final decree), expressly divided Husband's civil service retirement. The settlement agreement further stated:

C. The parties will cooperate in all ways necessary to give effect to this agreement. Without limitation, [Husband] will take whatever additional actions are necessary with the Office of Personnel Management in order to carry out this Agreement.

D. Each party agrees to reimburse the other party for any monies he or she may receive which should go to the other under this retirement paragraph.

. . . .

F. Husband's retirement is vested but has not yet matured. If and when said retirement does mature, Wife is entitled to a portion of the proceeds of the retirement as Husband receives such proceeds. Wife is entitled to thirty-five percent of the community property portion of the retirement annuity. Thus, Wife is entitled to:

35% of [the] number of months of employment during marriage [divided by the] number of months of service toward retirement[.]

{4} Husband retired in 1995, after remarrying in 1992. Just prior to Husband's retirement, Wife forwarded the final decree and the settlement agreement to the OPM and requested payment in accordance with the settlement agreement. At about the same time, Husband filled out an OPM form on which he indicated that his current wife should receive a survivor benefit annuity. Based on Husband's survivor benefit designation, the OPM reduced both Husband and Wife's monthly retirement payments to fund the survivor annuity.

{5} Wife initiated this case in November 1997 against Husband by filing a motion to enforce final decree regarding survivor benefit annuity of civil service retirement (the motion to enforce). In this motion, Wife asked the district court to: (1) divide the parties' interest in the retirement as set forth in the final decree, and (2) decree that Wife is protected by the survivor benefit plan should Husband predecease her entitling her to the same percentage of the survivor benefit annuity as she was entitled to from the retirement annuity.

{6} Husband filed a motion contesting the jurisdiction of the court to enforce the final decree, claiming that the motion sought to modify or amend the final decree and was therefore barred by NMSA 1978, § 39-1-1 (1917), which provides that the district court maintains jurisdiction over a case for thirty days from the date of a final order. Husband also contended that Rule 1-060(B) NMRA, addressing when a judgment may be reopened, was unavailable to Wife. The district court concluded that it "does not or may not have continuing jurisdiction to modify the property portion of a divorce decree entered more than 30 days earlier" in the original divorce action. However, the court found that "other causes of action [are] available . . . [such as a] suit to divide previously undivided assets under [NMSA 1978,] § 40-4-20 [(1993)]." Presumably taking note of the court's statement, one month later Wife filed, as a separate cause of action against both Husband and his new wife, a petition to divide undivided assets (survivor benefit annuity) and to include the survivor benefit annuity in the settlement agreement pursuant to Rule 1-060(B)(5) or (6) (the petition). The district court then held a case status conference in which the parties agreed to contact an expert to attempt to draft an order directing the OPM how to divide the existing survivor benefit annuity.

{7} The efforts to settle the survivor benefit annuity issue through the expert failed and little of consequence occurred until April 2003, when a different district court judge was assigned to the case. The court consolidated the case in which Wife filed her motion to enforce and the case in which Wife filed

her petition. The court also appointed a Rule 11–706 NMRA expert to help it determine the issues related to the survivor benefit annuity.

{8} After a hearing, the court determined that the survivor benefit was not an undivided asset, but stated that both parties acknowledged that Wife was entitled "to some remedy for the diminishment of [an] asset she was awarded in the [settlement agreement]," and indicated that the issue of remedying the reduction of Wife's benefits was properly before the court, therefore refusing to dismiss Wife's motion to enforce, as urged by Husband. During these proceedings, the parties agreed that because of Husband's submission of the OPM form to obtain survivor benefits for his new wife, and the commensurate reduction in retirement benefits to Wife, Wife was not receiving the amount she should have received under the settlement agreement and the final decree. Also during the proceedings, Husband filed another motion to dismiss Wife's still pending motion to enforce the final decree, asserting as he had earlier in the proceedings that the district court lacked jurisdiction to act on the motion.

{9} Eventually, the parties agreed to and the district court approved and entered a Stipulated Qualified Civil Service Order (the QCSO)[1], which awarded Wife a former spouse survivor annuity equal to 23.94% of the maximum possible survivor annuity should she survive Husband. The court held another hearing and issued a final order on February 27, 2004, in which the court noted Wife's concern whether the OPM would accept the QCSO, but nevertheless concluded and ruled that the QCSO "settles the sole issue between the parties, there is no justiciable issue before the Court, and therefore this matter is deemed resolved." The court further determined that "the issues decided herein are not intertwined with any legal or factual issues not yet resolved." The court

also denied Husband's motion to dismiss Wife's motion to enforce.

{10} The final order did not satisfy Husband because it did not contain words dismissing Wife's motion to enforce, and in March 2004, Husband sought to amend the final order to include a dismissal of the motion to enforce. Apparently to preserve his appeal right, Husband appealed the final order on April 9, 2004, immediately after which the court entered an order on April 12, 2004, granting Wife attorney fees and denying Husband's motion to amend, causing Husband to file an amended notice of appeal on April 14, 2004, as to several of the court's orders in the case.

{11} Meanwhile, the QCSO had been forwarded to the OPM. After Husband's appeal was filed, but before the appellate briefs were filed, the OPM responded by stating that, under the statutes and federal regulations governing the civil service retirement, it could not process the QCSO because it was issued after Husband retired and it was not the first order dividing the marital property of the parties. Wife appealed this determination by the OPM and the decision was affirmed by an administrative judge of the Merit Systems Protection Board.

{12} On his appeal in this Court, Husband raises the following issues: (1) the district court erred by denying his motion to dismiss Wife's motion to enforce the 1985 final decree (a) because pursuant to Section 39–1–1, the court lacked subject matter jurisdiction to consider the motion and Wife had no grounds for relief under Rule 1–060(B), and (b) because the motion impermissibly sought modification of the final decree, in that Wife did not identify any breach of the settlement agreement permitting any enforcement action; and (2) the court erred in awarding Wife attorney fees because (a) the court lacked jurisdiction as to Wife's motion to

---

1. We assume, for purposes of this appeal, that a QCSO is or was intended to be comparable to a Qualified Domestic Relations Order (QDRO). "A QDRO is a mechanism by which a nonemployee spouse can receive his or her community share of an employee spouse's retirement benefits directly from the employer." *Ruggles v. Ruggles*, 116 N.M. 52, 55 n. 3, 860 P.2d 182, 185 n. 3 (1993). "QDRO[s] were created by the Retirement Equity Act of 1984." *Id.* Any court order, including a final decree, can be considered a QDRO if it meets certain qualifications. *See* 29 U.S.C. § 1056(d)(3)(B) (1997). It appears that federal civil service retirement plans are not subject to the Retirement Equity Act. *See Ruggles*, 116 N.M. at 57 n. 5, 860 P.2d at 187 n. 5.

enforce, and (b) it was an abuse of discretion to award the fees.

## DISCUSSION

### The District Court Had Jurisdiction to Enforce the Decree and Award Attorney Fees

{13} The question of whether a court has subject matter jurisdiction is a question of law which we review de novo. *Weddington v. Weddington,* 2004–NMCA–034, ¶ 13, 135 N.M. 198, 86 P.3d 623. "Our district courts ... enjoy the presumption of jurisdiction, in the absence of proof to the contrary." *Ottino v. Ottino,* 2001–NMCA–012, ¶ 6, 130 N.M. 168, 21 P.3d 37 (internal quotation marks and citations omitted).

{14} To set the stage, we briefly discuss New Mexico law pertinent to the division of retirement benefits. At the time of the parties' divorce, there were two ways that vested but unmatured retirement benefits could be divided. The first was the lump sum method, under which the court would attempt to determine the value of the retirement benefits at the time of divorce and divide the assets of the community taking that value into account. *See Ruggles,* 116 N.M. at 58, 860 P.2d at 188. This method resulted in a lump sum payment to the non-employee spouse of his or her share of the community interest in the pension plan. *See id.* Our Supreme Court has expressed a preference for the lump sum method because it "provid[es] a clean break between the parties and an unencumbered pension plan to the employee, [and it] reliev[es] the court of any further supervision over the parties' relationship." *Id.* at 61, 860 P.2d at 191.

{15} The second method of dividing pension plans used was the "pay as it comes in" or "reserved jurisdiction" method. *Id.* at 54–55, 58, 860 P.2d at 184–85, 188 (internal quotation marks omitted). Under this method, "only the formula for division is determined at the time of divorce[.]" *Id.* at 64, 860 P.2d at 194 (internal quotation marks and citation omitted). Under the reserved jurisdiction method, the district court would divide community property "equally *when the community is dissolved* [,]" and would "not distribute the community interests [in retirement benefits] at the time of dissolution, but reserve[ ] jurisdiction to distribute the bene-

fits when the employee spouse actually receives them." *Id.* at 58, 60, 860 P.2d at 188, 190 (internal quotation marks and citation omitted). Thus, the non-employee spouse would receive his or her portion of the benefits when the benefits are paid. *Id.* at 58, 860 P.2d at 188.

{16} Turning to the issues raised by Husband on appeal, Husband argues that the district court did not have jurisdiction to hear Wife's motion to enforce, discussing both Section 39–1–1 and Rule 1–060. Section 39–1–1 states: "Final judgments and decrees, entered by district courts in all cases ... remain under the control of such courts for a period of thirty days after the entry thereof[.]" Husband argues that because Wife did not file her motion to enforce the final decree within thirty days from the date of the final decree, the court lost jurisdiction. Rule 1–060(B) sets out a list of circumstances under which a party can request relief from a judgment. Rule 1–060(B)(1) to (6). Husband argues that this case does not fall within any of those circumstances.

{17} Husband's jurisdiction argument relies on his characterization of Wife's motion to enforce as a motion to modify the final decree disguised as a motion to enforce the final decree. Were the motion an attempt to change the final decree, Husband's argument that the district court lacked jurisdiction to modify a previous judgment may have some weight. *See Higginbotham v. Higginbotham,* 92 N.M. 412, 413, 589 P.2d 196, 197 (1979) (holding that, under Section 39–1–1, the district court did not have jurisdiction to change the provisions of a divorce decree more than thirty days after its entry where the case did not fall into any exceptions to Section 39–1–1 found in NMSA 1978, § 40–4–7 (1973) (amended 1997) or Rule 1–060). However, in this case his argument fails for two reasons.

{18} First, we disagree with Husband's characterization of the relief sought in this case as a modification of the final decree. Husband argues that Wife's request to receive part of the survivor benefit converted the motion into a motion for modification. However, case law has made it clear that "[a]

388

community interest in a pension plan containing a survivor's benefit provision constitutes a valuable portion of the community assets, and the survivor's benefit provision should be considered in valuing and distributing the community interest in the retirement plan." *Irwin v. Irwin*, 1996–NMCA–007, ¶20, 121 N.M. 266, 910 P.2d 342. An employee-spouse cannot defeat or reduce the interest of the non-employee spouse by choosing some pension option. *See id.* ¶21 (indicating that the district court ordered the husband to revoke his prior exercise of a retirement option which would have eliminated the wife's right to survivor benefits, and that the husband complied with the order). *Irwin* and *Ruggles* tell us that retirement and survivor pension benefits are intertwined and that both are to be considered in valuing community assets. Therefore, remedial enforcement against diminishment of a non-employee spouse's community retirement entitlement, as occurred in the present case, is not a modification seeking an additional or different value. *See Irwin*, 1996–NMCA–007, ¶22, 121 N.M. 266, 910 P.2d 342 (holding "that in situations such as those existing here where the community interest in the pension is fully vested and matured, the trial court should value the retirement benefits as a whole, including the value of the survivor's benefit provision of the retirement plan, in order to fully and fairly apportion each party's share of the retirement benefits").

{19} Second, the district court here actually retained jurisdiction to supervise the distribution of the funds. *See Ruggles,* 116 N.M. at 60, 860 P.2d at 190. In this case, the wording of the settlement agreement makes it clear that the division of the retirement benefits was through the "reserved jurisdiction," or "pay as it comes in" method. The settlement agreement states: "Wife is entitled to a portion of the proceeds of the retirement *as Husband receives such proceeds.*" (Emphasis added.) As contemplated by the reserved jurisdiction method, the settlement agreement divided all of the community assets, including the retirement benefits, and it set out the formula for dividing the retirement benefits. As explained in *Ruggles,* under this method of division, the court "reserves jurisdiction to distribute the

benefits when the employee spouse actually receives them." *Id.*

{20} We hold that neither Section 39–1–1 nor Rule 1–060(B) precluded the district court from considering Wife's motion to enforce and that, pursuant to *Irwin* and *Ruggles,* the court had jurisdiction to grant relief to Wife as it did by approving the QCSO and it also had jurisdiction to consider attorney fees.

**By Settling, Husband Waived a Determination on Appeal of His Motion to Dismiss for Failure to State a Claim**

{21} Husband asserts that the court erred in denying his motion to dismiss Wife's motion to enforce for failure to state a claim. Husband argues that Wife was not entitled to relief because (1) the settlement agreement does not refer to or require a QCSO in order to effect Wife's receipt of a pro rata share of any survivor annuity; (2) Wife already had an equitable right, if not a legal one, to receive her pro rata share of any survivor annuity; and (3) Wife had no right to receive distributions from the survivor annuity unless she survived Husband. As a consequence, Husband asserts, Wife never identified any breach of the settlement agreement for which she would be entitled to relief. With no breach, he argues, there is no need to enforce, and whatever Wife is seeking can only be a modification by seeking (1) entry of a QDRO subdividing a divided asset, (2) an award of a legal right to participate in the survivor annuity when an equitable right to participation already existed, and (3) damages for breach of the settlement agreement when the condition precedent to performance had not occurred. These remedies, in Husband's view, exceeded "enforcement" of the settlement agreement by granting rights Wife did not bargain for and by abrogating his right to choose the attributes of his retirement.

{22} Under this point, Husband asserts that Wife's motion to enforce failed to state a claim for relief, although Husband does not cite Rule 1–012(B)(6) NMRA or any other rule for this claim; and he further asserts that the court did not have jurisdic-

tion to modify the final decree under Rule 1-060(B). We hold that, insofar as Husband claims a lack of subject matter jurisdiction under this point, we have already determined that the court had subject matter jurisdiction. Insofar as Husband claims that Wife failed to state a claim on which relief can be granted, we hold that by agreeing to the QCSO and approving its entry, Husband waived the defense of failure to state a claim and therefore has no basis on which to appeal the issue. *Cf. Gallup Trading Co. v. Michaels*, 86 N.M. 304, 305, 523 P.2d 548, 549 (1974) (holding that "when appellant consented to the entry of summary judgment against him, ... he thereby acquiesced in the judgment and lost his right to appeal"). The issue of Wife's entitlement to the survivor annuity relief she was seeking was settled by entry of the QCSO, and Husband has no basis on which to now revisit the propriety of Wife's entitlement to the relief she obtained through the settlement.

**Attorney Fees**

{23} Husband claims that the district court abused its discretion in awarding Wife attorney fees. In its final order, the court stated that either party could file an attorney fee affidavit. Based on a motion filed by Husband, the court appointed a special master to consider the parties' incomes and financial resources. Though Husband's brief on appeal states that a hearing before the special master took place, he states that the special master has not filed a report on the issue and that the district court has not entered any orders on the issue. The record does not contain a special master's report or an order on the issue.

{24} Because the court never filed an order after the hearing before the special master, there is no final order settling the matter of attorney fees. *See State ex rel. Children, Youth & Families Dep't v. Frank G.*, 2005-NMCA-026, ¶ 40, 137 N.M. 137, 108 P.3d 543 ("The general rule in New Mexico for determining the finality of a judgment is whether all issues of law and fact have been determined and the case disposed of by the trial court to the fullest extent possible." (internal quotation marks and citation omit-ted)), *aff'd*, 2006-NMSC-019, 139 N.M. 459, 134 P.3d 746. We remand with instructions for the court to bring the issue of attorney fees to a conclusion.

{25} Husband has also requested attorney fees on appeal. The rule governing the recovery of fees on appeal is that "the party prevailing shall recover the party's costs unless otherwise provided by law, by these rules, or unless the court shall otherwise determine." Rule 12-403(A) NMRA. Husband was not successful on any issue on appeal. We deny his request for attorney fees.

**CONCLUSION**

{26} We hold that the district court had jurisdiction to supervise the distribution of the retirement fund by granting Wife a percentage of the survivor annuity in the QCSO. In addition, we hold that the district court was properly enforcing, not impermissibly modifying, the court's final decree. In addition, we hold that Husband waived this argument that Wife's motion to enforce failed to state a claim for relief. We further conclude and hold that the district court had jurisdiction to award attorney fees. We remand for a determination of attorney fees.

{27} Because the OPM refused to accept the QCSO, Wife points out on appeal that she "is, and has been, contributing monies that she will probably never have the benefit of, and the forced contribution reduces the amount of her annuity for the retirement amount that had been contemplated that she would be entitled to when the parties originally divorced." Wife suggests that there must be a "resolution." None of the remedies Wife suggests have been addressed by the district court. We offer no view as to whether Wife can obtain the resolution she believes is required.

{28} **IT IS SO ORDERED.**

WE CONCUR: MICHAEL D. BUSTAMANTE, Chief Judge, and IRA ROBINSON, Judge.