2007-NMCA-001

149 P.3d 593

**Sherry R. HADRYCH, n.k.a. Sherry R. Foote, Petitioner–Appellee,**

v.

**Timothy B. HADRYCH, Respondent– Appellant.**

No. 25,456.

Court of Appeals of New Mexico.

Oct. 4, 2006.

Certiorari Denied, No. 30,077, Jan. 5, 2007.

Antonio Maestas, Albuquerque, NM, for Appellee.

Acton Law Office, PC, Gregory M. Acton, Law Offices of Heidi S. Webb, Heidi S. Webb, Albuquerque, NM, for Appellant.

**OPINION**

CASTILLO, Judge.

{1} In this divorce case, Husband appeals an order awarding Wife a money judgment in the amount of her share of Husband's military retirement benefits. Husband effected a significant reduction to Wife's share of the benefits when he converted his benefits to 100% disability payments and waived further retirement benefits. We addressed this issue in *Scheidel v. Scheidel,* 2000–NMCA–059, 129 N.M. 223, 4 P.3d 670. There, we relied in part on language in a marital settlement agreement (MSA) and held that an ex-spouse may not reduce the other party's share of military retirement benefits in this way. *Id.* ¶¶ 1, 22–23. By contrast, in our case, there was no MSA, only a final decree. We as-

signed this case to the general calendar to consider whether our holding in *Scheidel* should be expanded to include a situation in which there is no MSA and there is no language prohibiting Husband from reducing Wife's benefits in the final decree. We conclude that *Scheidel* still applies because it would be inequitable to allow one party, after judgment, to unilaterally reduce the other party's award of retirement benefits. Consequently, we affirm the trial court.

## I. BACKGROUND

{2} The facts are undisputed. The parties were divorced in 1996. In the original divorce decree, Wife was awarded 50% of Husband's retirement pay attributable to the time they were married. On December 11, 1998, the trial court entered an order clarifying the property settlement in the divorce decree and applying a mathematical formula to ascertain the exact amount of Husband's retirement pay that would be awarded to Wife. Husband retired from the military in 2000, and Wife began receiving her portion of the retirement pay. In January 2000, Husband was injured in a helicopter accident, was adjudged to be disabled, and was entitled to disability pay. At some point in late 2003, he waived his retirement pay in order to receive the disability pay instead.

{3} Section 1408 of the Uniformed Services Former Spouses' Protection Act provides that military disability pay is not divisible as community property upon divorce. *See* 10 U.S.C. § 1408(a)(4)(B). Consequently, once Husband waived his retirement benefits and elected disability pay, payments to Wife stopped in January and February 2004. After February 2004, payments resumed, but they were reduced from $663.20 per month to $248.50. Wife responded by filing an application for order to show cause on January 20, 2004.

{4} The trial court held that Wife was entitled to continue receiving an amount equal to the portion of military retirement payments that Husband had waived in order to receive the disability pay, and the court entered judgment against Husband. He does not challenge the amount awarded. He only argues that no award could be made at

all. He claims that state courts are without authority to award a portion of disability payments and that the trial court's order thus violates federal law and the United States Supreme Court decision in *Mansell v. Mansell*, 490 U.S. 581, 109 S.Ct. 2023, 104 L.Ed.2d 675 (1989). Husband seeks to avoid our holding in *Scheidel* and argues that the lack of an MSA prohibiting conversion of his retirement benefits to disability benefits makes his case distinguishable. He also claims that the trial court had no jurisdiction to enter the order because it constitutes a modification of the divorce decree, rather than enforcement.

## II. DISCUSSION

### A. Standard of Review

{5} Because the facts are undisputed, the legality of the trial court's order presents a question of law, which we review de novo. *See Largo v. Atchison, Topeka & Santa Fe Ry. Co.*, 2002–NMCA–021, ¶ 5, 131 N.M. 621, 41 P.3d 347 (stating that federal preemption is a legal question, which is reviewed de novo); *Kropinak v. ARA Health Servs., Inc.*, 2001–NMCA–081, ¶ 4, 131 N.M. 128, 33 P.3d 679 (applying a de novo standard of review where the appellant's position on appeal raises a question of law arising out of undisputed facts).

### B. Federal Preemption

{6} In *Mansell*, the Supreme Court held that state courts lack the power to treat as property divisible upon divorce military retirement pay that has been waived in order for the retiree to receive disability benefits. 490 U.S. at 594–95, 109 S.Ct. 2023; *see* 10 U.S.C. § 1408(a)(4)(B) (defining " 'disposable retired pay' " to exclude any amounts waived in order for the retiree to receive disability benefits).

{7} In *Scheidel*, we considered the prohibition against awarding disability payments discussed in *Mansell*. An MSA divided the husband's military retirement benefits between the parties and prohibited the husband from taking any voluntary action to reduce the wife's share of the benefits; the MSA also contained an indemnity provision requir-

ing the husband to compensate the wife for any reductions in her benefits that might result from the husband's voluntary actions. *Scheidel*, 2000–NMCA–059, ¶¶ 1–2, 129 N.M. 223, 4 P.3d 670. At the time of the divorce, the husband was 30% disabled, but in subsequent years, the husband's disability rating increased to 100%. *Id.* ¶ 3. Since the wife's share of the military pension was based upon the husband's retirement pay, her share went down dramatically when the husband began receiving additional disability benefits and waived a corresponding amount of retirement pay, as required by federal law. *Id.* ¶ 4. The wife sought an order forcing the husband to compensate her for a reduction in benefits, and the trial court ruled in favor of the wife. *Id.* On appeal, we affirmed the trial court's order and rejected the husband's challenge, which was based on *Mansell*. *Scheidel*, 2000–NMCA–059, ¶¶ 7–12, 129 N.M. 223, 4 P.3d 670. We were persuaded by cases from other jurisdictions holding that neither *Mansell* nor federal law prohibit a state court from enforcing indemnity provisions designed to guarantee a minimum monthly income to a non-military spouse. *Scheidel*, 2000–NMCA–059, ¶ 8, 129 N.M. 223, 4 P.3d 670.

{8} We relied on the indemnity provision in the MSA and distinguished cases in which nothing in the settlement agreement precluded the husband from "doing anything to alter the amount the wife was to receive." *Id.* ¶ 11. We did not have to consider whether the same result would apply in a case such as the current one, where there is no indemnity provision or any MSA whatsoever. *See id.* ¶ 12 (holding that "federal law does not prohibit state courts from enforcing indemnity provisions which ensure the payment of a minimum sum to a non-military spouse as his or her share of a community pension").

{9} In our case, there is no indemnity provision and no non-alteration provision like those contained in *Scheidel*. Husband contends that the lack of an indemnity provision and MSA warrant a departure from *Scheidel*, and Husband argues that his case is controlled by *Mansell*, instead. Husband relies on language in *Scheidel* to support his position. *See id.* ¶ 11 (citing *In re Marriage of*

832

*Pierce*, 26 Kan.App.2d 236, 982 P.2d 995, 998 (1999), and stating that the *Pierce* court "rightly held" that the husband was free to waive his retirement benefits because there was no language in an MSA prohibiting him from waiving his retirement benefits).

{10} We disagree with Husband's argument. The final decree appropriately awarded Petitioner "[o]ne-half of Respondent's retirement pay attributable to the period of time the parties were married." The actual formula, based on the number of months the parties were married, was included in a later filed stipulated order, which clarified the "award from Respondent's military retirement pay." Husband makes much of the fact that Wife is relying solely on a divorce decree and cannot point to language in an MSA that prohibits him from waiving his right to retirement benefits. We do not find this distinction compelling. Divorce decrees are construed in the same manner as other written instruments are. *See Schueller v. Schueller*, 117 N.M. 197, 199, 870 P.2d 159, 161 (Ct.App.1994). Wife's half interest in the military benefits was clearly established by the decree, and her interest was unconditional. There was no language expressly prohibiting what Husband did, but there was no language permitting it, either. The only fair and reasonable interpretation of the decree is that Wife was entitled to and reasonably expected that she would continue to receive half of the retirement benefits as they then existed. By contrast, Husband's argument that he could avoid the final decree's award and reduce Wife's benefits, at his sole election, is not a reasonable interpretation of the final decree.

{11} Given the clear division of benefits set by the final decree, we hold that the trial court could act to enforce and preserve Wife's right to benefits established by the final decree. We reach this conclusion because we cannot accept the inequity and unfairness that results when one party is allowed to unilaterally reduce the other's benefits established either under an agreement or a final decree. *See Scheidel*, 2000–NMCA–059, ¶¶ 7–9, 129 N.M. 223, 4 P.3d 670 (stating that it is equitable to require the husband to make up for the reduction caused by his conversion of his retirement benefits to disability benefits, since one spouse may not unilaterally reduce the other's benefits); *cf. Montero v. Montero*, 96 N.M. 475, 477, 632 P.2d 352, 354 (1981) (rejecting the idea that one parent, unilaterally and at his or her whim, could undermine child visitation rights simply by moving); *Bernal v. Nieto*, 1997–NMCA–067, ¶¶ 15–17, 123 N.M. 621, 943 P.2d 1338 (refusing to accept a construction of an MSA that would have allowed one party to unilaterally dilute a life insurance benefit); *Irwin v. Irwin*, 121 N.M. 266, 271, 910 P.2d 342, 347 (Ct. App.1995) (stating that one party is not permitted to choose a retirement option to defeat or reduce the interest of the other party). Husband cannot be permitted to unilaterally reduce the benefits awarded by the final decree, and the lack of language in an MSA does not give Respondent *carte blanche* to do so. *See Danielson v. Evans*, 201 Ariz. 401, 36 P.3d 749, 751, 755 (App. 2001) (holding that a court may enforce a decree and order by requiring the husband to " 'make up' " payments lost to the wife when he converted his retirement benefits to disability benefits); *Johnson v. Johnson*, 37 S.W.3d 892, 895–97 (Tenn.2001) (holding that the husband could not unilaterally alter the wife's share of his military retirement determined in the final decree). This fundamental principle appears to us to be far more important here than whether Wife's right to her half interest is contained in an MSA or a final decree or whether specific language in either prohibits Husband from unilaterally reducing her benefits. Since Wife's right to 50% of his retirement benefits was set by the decree, Husband could not change it.

{12} We also reject Husband's argument that language in *Scheidel* requires a holding in his favor. He is correct that there is some language in *Scheidel* suggesting that the lack of indemnification language in an MSA might require a different result, but the language in *Scheidel* on which Husband relies is not persuasive. In *Scheidel*, there was indemnification language, and we were not deciding the issue presented in this case: whether a spouse may reduce the other's benefits if there is no MSA or indemnification language.

Consequently, the issue in this case was not addressed by *Scheidel.* Cases are not authority for propositions not considered, *Fernandez v. Farmers Ins. Co. of Ariz.,* 115 N.M. 622, 627, 857 P.2d 22, 27 (1993), so we decline to find the language on which Husband relies persuasive. Of greater importance is *Scheidel's* policy of precluding one spouse from unilaterally reducing the other's military retirement benefits.

{13} Husband contends that the trial court's order violates *Mansell* because the order requires that his disability benefits be provided to Wife. Our holding is not at odds with *Mansell.* We join other jurisdictions that have held that *Mansell* only applies to the division of payments at the time of divorce and does not preclude a court from ordering the spouse who has adversely impacted the other spouse, by converting retirement benefits to disability benefits, to pay the other spouse directly. *See, e.g., Danielson,* 36 P.3d at 755–56; *Black v. Black,* 2004 ME 21, ¶ 10, 842 A.2d 1280 (agreeing with a number of other jurisdictions that federal law "does not limit the authority of a state court to grant postjudgment relief when military retirement pay previously divided by a divorce judgment is converted to disability pay, so long as the relief awarded does not itself attempt to divide disability pay as marital property"). *But see In re Marriage of Pierce,* 982 P.2d at 998 (expressing a contrary view). The position we adopt has been described as reflecting the majority view. *See Danielson,* 36 P.3d at 757; *In re Marriage of Lodeski,* 107 P.3d 1097, 1101 (Colo.Ct.App. 2004) (attributing the majority view to those cases that enlist equitable theories to prevent a military spouse from unilaterally defeating the other spouse's interest in military pay by switching the pay to disability pay after the divorce decree is entered).

{14} In our case, the retirement benefits were divided at the time of the divorce, and the retirement benefits were converted to disability pay later. The trial court's order does not identify disability payments as the source of the payments. Instead, the order leaves it to Husband to determine how he will pay the judgment. Therefore, the order does not violate *Mansell* because the "critical

factor, for the purposes of complying with federal law, is that the court order does not specifically require that disability benefits provide the source of the funds paid to the non-military spouse." *Scheidel,* 2000–NMCA–059, ¶ 14, 129 N.M. 223, 4 P.3d 670. In *Scheidel,* we specifically noted that the husband was free to utilize other assets to satisfy his obligation and that he "may be required to shuffle assets or rearrange his finances" in order to do so. *Id.* We deemed this result fair because the "[h]usband's increased disability rating . . . inured to his financial benefit, effectively creating additional income to him at [his w]ife's sole expense." *Id.*

{15} By the same token, we believe it is equitable here to require Husband to be responsible for the reduction in Wife's benefits. This is especially true because although Husband is deemed disabled by the military, he is employed by Lockheed and earns $3,200.00 net per month. Therefore, it is not at all unfair to require him to make up the difference caused when he waived his retirement benefits and converted them to disability benefits.

## C. Jurisdiction

■ {16} Relying on *Mendoza v. Mendoza,* 103 N.M. 327, 330–33, 706 P.2d 869, 872–75 (Ct.App.1985), Husband characterizes the trial court's action as a modification, rather than enforcement, and argues that the court was without jurisdiction to modify the final decree. *See also Hall v. Hall,* 114 N.M. 378, 388, 838 P.2d 995, 1005 (Ct.App.1992) (noting that a court's jurisdiction to enforce a divorce decree is expansive but that the court may modify a decree only in exceptional circumstances). He claims that the trial court modified the divorce decree because there was no language in the decree that addressed the eventuality of a change in retirement benefits and that the court's action therefore essentially added language to the decree. He argues that because there was no language prohibiting him from converting his benefits, the order "did not enforce anything in the [d]ivorce [d]ecree."

■ {17} A similar argument was made in the recent case of *Palmer v. Palmer,* 2006–

834

NMCA–112, 140 N.M. 383, 142 P.3d 971. In *Palmer*, when the husband retired, he selected the survivor benefit annuity with his present wife as the beneficiary and thereby effected a reduction in the award of retirement benefits to him and his former wife as established by the divorce decree. *Id.* ¶ 4. Husband argued that his former wife's motion to receive part of the survivor benefit was really a motion to modify the final decree. *Id.* ¶¶ 16–18. This Court discussed the two ways New Mexico law divides retirement benefits that have vested but have not matured: the lump sum method and the reserved jurisdiction method. *Id.* ¶¶ 14–15. Here, the trial court awarded the retirement benefits by setting out the formula for dividing the retirement benefits; the parties stipulated to the formula in order to clarify the distribution of this community property asset. The court thereby reserved jurisdiction to enforce distribution of the benefits once they are received by the employee spouse. *See Ruggles v. Ruggles*, 116 N.M. 52, 54–55, 68, 860 P.2d 182, 184–85, 198 (1993). As we stated in *Palmer*, "remedial enforcement against diminishment of a non-employee spouse's community retirement entitlement … is not a modification seeking an additional or different value." 2006–NMCA–112, ¶ 18, 140 N.M. 383, 142 P.3d 971.

{18} Husband's unilateral action significantly reduced benefits to which Wife was entitled under the final decree. While we agree that there was no language expressly addressing the change in retirement benefits that would occur if Husband were to become disabled, it is also true that the decree awarded to Wife 50% of the retirement benefits that had accrued to date of divorce. Husband's argument that no language prohibited him from electing to waive retirement benefits and convert them to disability benefits is not persuasive. There is no language in the decree permitting him to do so, either. We think it is quite a stretch for him to argue that the trial court could not intervene to address his attempt to significantly reduce the 50–50 distribution set by the decree. Consequently, we hold that the court's order constituted enforcement because the order maintained Wife's benefits at the same level as was established by the decree. *See Black*,

2004 ME 21, ¶¶ 11–13, 842 A.2d 1280 (concluding that the trial court's order constituted enforcement, not modification, and that the court could make adjustments necessary for the distribution, as set by the final decree, to occur); *Johnson*, 37 S.W.3d at 895–96 (holding that the trial court's order constituted enforcement, not modification, because the order awarded the wife what she was originally entitled to receive under the final decree). The order simply enforces the division set by the final decree, guarantees that the reasonable expectations of the parties concerning the allocation of the retirement benefits would be protected, and ensures that Husband's unilateral attempt to reduce Wife's benefits would go unrewarded. *See Danielson*, 36 P.3d at 758–59 (noting that the order protected the reasonable expectations of the parties). Under the facts in our case, we conclude that the trial court had jurisdiction to enter the order. Husband's technical argument rings hollow, and we reject it.

## D. Finality

■ {19} Finally, Husband argues that the trial court's order is invalid because it violates the principle of finality. Our cases recognize the important policy of finality—that divorce decrees cannot be revisited, unless there are exceptional circumstances. *See Mendoza*, 103 N.M. at 331–32, 706 P.2d at 873–74. But we disagree with Husband's argument. Husband's choice to convert his benefits is what undermined the finality of the divorce decree because his choice altered the rights of Wife that were set by the decree. The court's order preserved the division of benefits set by the judgment. Therefore, the order advanced the principle of finality; it did not violate it. *See Black*, 2004 ME 21, ¶ 13, 842 A.2d 1280 (noting that the husband's election to waive retirement benefits in favor of disability benefits promoted the exact instability the policy favoring finality of judgments was designed to avoid). Were we to hold otherwise, we would allow Husband to alter Wife's benefits without his having to obtain court approval. We cannot accept such an inequitable result.

## III. CONCLUSION

{20} We hold that the trial court had jurisdiction to enforce the final decree and to require Husband to pay Wife the share of his military retirement benefits awarded to her in the final decree. Accordingly, we affirm the order of the trial court.

{21} **IT IS SO ORDERED.**

WE CONCUR: A. JOSEPH ALARID, Judge.

IRA ROBINSON, Judge (specially concurring).

ROBINSON, Judge (specially concurring).

{22} I have chosen to specially concur because this case presents an opportunity to look at what might be described as the larger picture. In trying to analyze this case, I was impressed with the case of *In re Marriage of Pierce*, 26 Kan.App.2d 236, 982 P.2d 995 (1999). That divorce case went against our holding here. In *Pierce*, the Kansas Court of Appeals held that, under much the same fact pattern as our case, a state trial court had no jurisdiction over disability benefits received by a veteran and could not order the husband (the veteran) to change the payment back to retirement benefits and also could not order him to pay his disability benefits to his wife. *Id.* at 998. Then, the Kansas court said something really interesting: "We con-clude the court may not do indirectly what it cannot do directly." *Id.*

{23} The Kansas court held that the trial court had no method of granting relief to the wife. *Id.* That is exactly the opposite of what we are holding here. While *Pierce* is a minority decision, its reasoning seemed to make sense to me—a somewhat technical analysis, but a correct one. We do this every day.

{24} Then, I reread the Opinion in our case again. I had been concerned that it repeatedly reasoned that not allowing the husband to waive his retirement payments and switch to disability benefits was simply not "fair" to the wife and not "reasonable." The Opinion repeats this language several times.

{25} After further rumination, I have reached a different conclusion. What the Opinion does is precisely what we should be doing. We should be doing what is fair and reasonable. That is what justice is all about—fair and reasonable, not just technically workable or correct.

{26} I, therefore, concur.