2002-NMCA-045

45 P.3d 59

**Richard KERSCHION, Plaintiff–Appellee,**

v.

**PUBLIC SERVICE COMPANY OF NEW MEXICO, Defendant–Appellant.**

**No. 21,284.**

Court of Appeals of New Mexico.

March 4, 2002.

Victor A. Titus, Titus & Murphy Law Firm, Farmington, NM, for Appellee.

Robert C. Conklin, David W. Peterson, Keleher & McLeod, P.A., Albuquerque, NM, for Appellant.

## OPINION

ROBINSON, Judge.

{1} Public Service Company of New Mexico (PNM) appeals from the trial court's $31,000 judgment in Appellee Richard Kerschion's favor. Kerschion claimed that PNM, by its representatives, negligently misrepresented the terms of a severance package offered to him as an incentive to leave PNM's employ, and in addition, breached contract terms, inflicted emotional distress, and committed a prima facie tort. PNM maintained that Kerschion was entitled only to the standard retirement plan, rather than severance pay and the special enhancement, because he failed to comply with the terms of the union-negotiated severance package offered to all employees. We hold that Kerschion's state law claims are ‘preempted by federal labor law, and the district court erred in failing to dismiss them.

### FACTUAL AND PROCEDURAL BACKGROUND

{2} Kerschion worked for PNM at the San Juan Generating Station, and was a member and former steward of the International Brotherhood of Electrical Workers Local Union No. 611 (Union). The Union had negotiated a series of collective-bargaining agreements that governed the terms and conditions of the employment of PNM employees, including Kerschion.[1] In 1996, PNM determined that due to systemic changes, the San Juan Generating Station would require fewer employees in coming years. In order to smoothly effectuate the reduction in force, PNM and the Union came to a Mutual Agreement, which the Union ultimately ratified by vote. The Mutual Agreement provided a $5000 enhancement to

---

1. Throughout this opinion, we refer to "collective-bargaining agreements," as a general term including all union-negotiated agreements subject to the Labor Management Relations Act. The Mutual Agreement between the Union and PNM is one such collective-bargaining agreement. The "Collective Bargaining Agreement" refers to the agreement by that name between the Union and PNM in this case.

the Collective Bargaining Agreement's severance package for employees who volunteered for layoff within a particular window of time. Kerschion himself voted in favor of the Mutual Agreement.

{3} Specifically, the Mutual Agreement guaranteed that employees would receive notice ninety days before the layoff date, which would fall sometime after June 1, 1998. It also required that employees sign a release of claims against PNM. The severance package would be payable upon layoff. In February 1997, Kerschion signed a declaration of intent to participate in the layoff program and sign the release. Subsequently, Kerschion became concerned that signing the release would prevent him from collecting on a pending workers' compensation claim. He wrote a letter to a PNM representative dated April 8, 1997, requesting clarification. It is not clear from the record whether the release would have affected Kerschion's workers' compensation benefits, but the PNM representative reassured Kerschion by adding language to the Release Agreement that purported to insure that Kerschion would not be waiving any workers' compensation claim by signing the agreement. However, the new language mistakenly was added to a prior, rejected version of the Release Agreement that contained a blank space for the termination date. Kerschion asked what he should write in that space and erroneously was told to insert "today's date," or April 10, 1997.

{4} Four days later, PNM realized its error and presented Kerschion with a corrected Release Agreement, in conformance with the version negotiated and settled upon by the Union and management. A Union representative told Kerschion that the document he had signed was not a legal document because it was not what the Union had agreed would be signed by all employees. Both PNM and the Union told Kerschion that he had to sign the corrected agreement in order to receive the severance money. Kerschion refused, and let lapse the forty-five day period allowed for signing to lapse. As a result, PNM told him that he was not entitled to any severance. Kerschion filed a grievance asserting PNM failed to comply with the rejected version of the Release Agreement and asserting PNM violated the severance section of the Collective Bargaining Agreement. PNM denied the grievance. The Union assisted Kerschion in appealing the denial. The appeal was denied in November 1997. The decision stated that Kerschion's grievance was untimely, and therefore treated as a complaint, which PNM refused to honor.

{5} In December 1997, Kerschion gave written notice of his retirement, effective March 1, 1998. In February 1998, he filed a declaratory judgment action and complaint for breach of contract, breach of the covenant of good faith and fair dealing, and intentional or reckless infliction of emotional distress, requesting the enforcement of the non-standard Release Agreement he had signed. At a post-trial hearing, the court permitted Kerschion to amend his complaint to include a claim of negligent misrepresentation. The district court awarded Kerschion $31,000 in damages for negligent misrepresentation, which included $26,000 in accordance with the severance provision of the Collective Bargaining Agreement and the $5000 enhancement that was offered to employees at the San Juan site through the Mutual Agreement.

## DISCUSSION

### Federal Preemption

{6} Section 301(a) of the LMRA, 29 U.S.C. § 185(a) (1998), directs that "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties." Section 301 bears a preemptive effect upon claims raised in state court that require the interpretation or application of a collective-bargaining agreement. *See, e.g., Caterpillar Inc. v. Williams*, 482 U.S. 386, 394, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987); *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 209–210, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985). The purpose of Section 301(a) preemption is

to assure that the purposes animating § 301 will be frustrated neither by state

laws purporting to determine "questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement," nor by parties' efforts to renege on their arbitration promises by "relabeling" as tort suits actions simply alleging breaches of duties assumed in collective-bargaining agreements.

*Livadas v. Bradshaw,* 512 U.S. 107, 122–23, 114 S.Ct. 2068, 129 L.Ed.2d 93 (1994) (citation omitted).

■ {7} Our Supreme Court in *Self v. United Parcel Service, Inc.,* 1998–NMSC–046, 126 N.M. 396, 970 P.2d 582, addressed this issue, holding, in keeping with United States Supreme Court precedent, that claims which require interpretation of a collective-bargaining agreement are either "substantially dependent" on the analysis of the collective-bargaining agreement or "inextricably intertwined" with interpretation of its terms, and must be decided by federal law. *Id.* ¶ 12 (citations omitted). Therefore, the dispositive question in the instant case is whether Kerschion's claims are substantially dependent or inextricably intertwined with the analysis or interpretation of the negotiated collective-bargaining agreements between the Union and PNM.

{8} In *Self,* the claims were not preempted, because they were based on allegations of violations of non-negotiable state law rights under the state Minimum Wage Act. *Id.* ¶¶ 13–15. Kerschion argues that because his unique contract with PNM involved his workers' compensation claim, it too concerned an independent state right not subject to preemption. We disagree. Although Kerschion's concern about his workers' compensation claim may have been the impetus for the modification of the Release Agreement, the claims he asserted in this case concerned only his right to severance pay, and did not concern his rights under the New Mexico Workers' Compensation Act. Kerschion's right to receive severance pay is not at all dependent on, or even related to, any state law right he may have to workers' compensation benefits. Therefore, the result in *Self* is not warranted here.

■ {9} In order to avoid preemption, a claim must require no more than reference to, as opposed to analysis or interpretation of a collective-bargaining agreement. *See Livadas,* 512 U.S. at 124, 114 S.Ct. 2068; *Wynn v. AC Rochester,* 273 F.3d 153, 157–58 (2d Cir. 2001). The difference between "consulting" an agreement and "interpreting" one may be a fine one, but the federal cases addressing this issue are instructive in determining where on the spectrum Kerschion's case lies. For example, in *Lueck,* 471 U.S. at 220–21, 105 S.Ct. 1904, the Court held that Section 301 preempted the employee's state law tort claim for bad faith handling of the employee's disability insurance claim because it was necessary to determine whether the applicable collective-bargaining agreement provided for or precluded the relief sought. We similarly conclude that Kerschion's state law claim requires a consideration of whether the collective-bargaining agreements provide for or preclude the relief sought: enforcement of Kerschion's independent and unique Release Agreement.

{10} Kerschion argues that Section 301 preemption is inapplicable to this case because the contract terms at issue were negotiated solely between himself, as an individual worker, and the employer. As a result, Kerschion maintains that his claim is not based on rights substantially dependent on a collective-bargaining agreement. However, this scenario does not preclude federal preemption of his claim.

{11} In *Schuver v. MidAmerican Energy Co.,* 154 F.3d 795 (8th Cir.1998), retired employees sued their former employer for promissory estoppel, equitable fraud, and breach of fiduciary duty regarding retirement benefits. The retirees argued that these claims were not preempted because they were not dependent on any interpretation or analysis of a collective-bargaining agreement. The appellate court determined that the claims were properly preempted because the retirees would have to show that the terms of the contract were not superseded or contradicted by the terms of the collective-bargaining agreement. *Id.* at 799; *see also Smith v. Colgate–Palmolive Co.,* 943 F.2d 764, 769–70 (7th Cir.1991) (holding that

fraud claim was subject to Section 301 preemption because the fact finder would have to consider the provisions of the union-negotiated agreement to determine if the plaintiffs had reasonably relied on misrepresentations). As were the retirees in *Schuver,* Kerschion was required to show that the terms of any independently negotiated Release Agreement were not superseded or contradicted by the terms of the Collective Bargaining Agreement.

{12} We further note that most of the cases Kerschion cites to support his argument against preemption involve claims for wrongful or retaliatory discharge, which courts have held are not preempted by Section 301. *See, e.g., Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 407 n. 7, 410 n. 9, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988) (noting retaliatory discharge cases are based on a non-negotiable state right). Because Kerschion made no such claim, this line of cases is not applicable to the Section 301 analysis in this case.

{13} The remaining cases Kerschion cites in opposition to preemption are also not instructive. In *Caterpillar Inc.,* the Court's determination turned on the doctrine of "complete preemption," and did not decide the issue of Section 301 preemption. 482 U.S. at 392–98, 107 S.Ct. 2425. In *Beals v. Kiewit Pacific Co.,* 114 F.3d 892 (9th Cir.1997), unlike here, there was no dispute about the effect of the collective-bargaining agreement on the plaintiffs' independent contract. In *Williams v. Local Union 911, United Steelworkers of America,* 31 F.Supp.2d 40, 44 (D.R.I.1998), the claim was based on union by-laws rather than provisions in the collective-bargaining agreement. Lastly, in *Sweeney v. Westvaco Co.,* 926 F.2d 29, 40–41 (1st Cir.1991), the court did not reach the merits of the preemption argument. Accordingly, Kerschion offers us no compelling legal support for his argument against preemption.

### The Collective Bargaining Agreement

{14} By its terms, the Collective Bargaining Agreement governs "rates of pay, wages, hours of employment, and other terms and conditions of employment, including but not limited to the negotiation of an Agreement."

Kerschion does not dispute that the establishment of a severance package is an area in which PNM employees are exclusively represented by the Union. The Collective Bargaining Agreement is inextricably intertwined with the analysis of Kerschion's claims for several reasons. The Collective Bargaining Agreement states that the Union shall be the sole negotiator of employment terms. Therefore, the district court must as a threshold issue determine the effect of this provision on Kerschion's ability to form a separate Release Agreement with PNM. The Collective Bargaining Agreement sets the terms and conditions of severance pay. To that end, Article 24(B) reads:

> **B.   Severance.** This provision does not apply to any termination for cause or voluntary resignations or retirement.
>
> . . .
>
> Any employee who is laid off will receive the following: **Two** months straight time pay at the day rate. **One** week of straight time pay, at the day rate, for each full year of service.

{15} Indeed, the district court's findings of fact do interpret, analyze, and apply the Collective Bargaining Agreement. The district court found that the Collective Bargaining Agreement prevented the parties from entering into any separate contracts, that the parties should be held to its terms, and that PNM should pay the "severance pay established by the collective bargaining agreement less the amount of salary from the date of Plaintiff's retirement to the date other employees were terminated in accordance with the collective bargaining agreement."

### The Mutual Agreement

{16} Furthermore, we agree with PNM that the Collective Bargaining Agreement is not the only labor agreement which triggers the preemption inquiry in this case. *See Angst v. Mack Trucks, Inc.,* 969 F.2d 1530, 1535 (3d Cir.1992) (applying Section 301 preemption to a negotiated labor agreement that modified the collective-bargaining agreement's provisions but offering lump-sum severance). The language and purpose of Sec-

tion 301 preemption are served by including labor agreements other than those designated as "collective-bargaining agreements." Preemption in this area of law undertakes to "develop and protect a uniform federal common law for adjudication of collective-bargaining contract disputes." *Self,* 1998 NMSC 046, ¶ 11, 126 N.M. 396, 970 P.2d 582. To construe the purpose of Section 301 as limited to those labor contracts entitled "collective-bargaining agreement" would thwart the intent of Section 301, which is to insure that these types of labor disputes are consistently decided.

{17} The Mutual Agreement that codified the Union and PNM's agreement to conduct layoffs after a certain date with ninety-day notice and a $5000 severance enhancement for San Juan employees who volunteered for the program is also a labor agreement as contemplated by Section 301. In order to decide Kerschion's claims, this agreement, too, would have to be interpreted. In order to determine the viability of his claims, a court would have to determine whether Kerschion had any ability or authority to separately contract with PNM in securing a severance package. Whether Kerschion was entitled to severance despite his failure to sign the negotiated Release Agreement, whether PNM negligently misrepresented the validity of the independent contract, and whether PNM negligently informed Kerschion that without signing the corrected Release Agreement or complying with its terms he would not be entitled to severance pay, are all questions that require the construction and interpretation of the Mutual Agreement. Even for a claim of negligent misrepresentation, it must first be determined whether Kerschion reasonably relied on PNM's initial Release Agreement. The terms of the Mutual Agreement, and Kerschion's knowledge of those terms are part and parcel of this inquiry. If Kerschion's issues depend on or are intertwined with the interpretation or analysis of that document, preemption is required. We hold that Kerschion's claims are indeed intertwined with the Mutual Agreement so that his claims are subject to Section 301 preemption.

{18} We conclude that Kerschion's claims in this case were substantially dependent on an analysis of one or both collective-bargaining agreements and inextricably intertwined with an interpretation of their terms. We therefore hold that Kerschion's claims are preempted by Section 301.

{19} Accordingly, the judgment of the district court is vacated, and the case is remanded for dismissal in keeping with this opinion.

{20} **IT IS SO ORDERED.**

WE CONCUR: RICHARD C. BOSSON, Chief Judge, and JONATHAN B. SUTIN, Judge.