**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2011-NMCA-035**

**Filing Date:  March 11, 2011**

**Docket No. 29,197**

**WILLIAM R. HUMPHRIES,**

     **Plaintiff-Appellant,**

**v.**

**PAY AND SAVE, INC., a/k/a LOWE'S**
**GROCERY #55 and TIM COTTON,**

     **Defendants-Appellees.**

**APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY**
**James W. Counts, District Judge**

Steven K. Sanders & Associates, LLC
Steven K. Sanders
Albuquerque, NM

for Appellant

Littler Mendelson, P.C.
R. Shawn Oller
Phoenix, AZ

for Appellees

**OPINION**

**KENNEDY, Judge.**

**{1}**     Plaintiff William R. Humphries argues the district court improperly dismissed his claims.  He alleged below that his employers Pay and Save, Inc., and Tim Cotton (collectively Defendants) improperly terminated his employment on suspicion that he engaged in union-organizing activities.  The district court concluded that federal labor law preempted Plaintiff's claims.  We agree and affirm.

1

**BACKGROUND**

**{2}** On May 13, 2008, Plaintiff filed a complaint in the district court seeking relief on six counts: (1) breach of contract; (2) breach of the covenant of good faith and fair dealing; (3) negligent or intentional misrepresentation; (4) wrongful termination; (5) tortious interference with contractual relations (against Tim Cotton individually); and (6) declaratory relief. All counts relied on the same core of common facts. Specifically, Plaintiff alleged that until he was terminated on February 23, 2006, he had been employed as a produce manager for five years at Lowe's Grocery #55 in Alamogordo, New Mexico. Defendant Pay and Save, Inc., owns and operates Lowe's Grocery #55, and Defendant Tim Cotton was the store manager at the time Plaintiff was terminated. Plaintiff alleged that although he had never been "reprimanded or disciplined . . . in any manner," Defendants fired him because they "believed [he] was involved in organizing the employees of Lowes." Plaintiff contended that termination in this manner was unjust and that Defendants' actions resulted in numerous injuries for which he sought compensation. Plaintiff's complaint for wrongful termination specifically asserted Defendants' violation of state public policy that encourages the right to form, join, organize, and collectively bargain as a member of a labor organization.

**{3}** On July 7, 2008, Defendants filed a motion to dismiss the complaint. In pertinent part, they argued that pursuant to Rule 1-012(B)(1) NMRA and Rule 1-012(B)(6) NMRA, the federal labor law vested the National Labor Relations Board (NLRB) with exclusive and primary jurisdiction over Plaintiff's claims. Citing *San Diego Building Trades Council v. Garmon*, 359 U.S. 236 (1959), Defendants argued that the facts underlying Plaintiff's claims, if true, constituted an unfair labor practice under the National Labor Relations Act (NLRA), 29 U.S.C. § 157 (1947) and 29 U.S.C. § 158 (1974). As such, the claims were expressly preempted under long-standing Supreme Court precedent. Defendants further argued that if Plaintiff were to claim status as a "supervisor" outside the NLRA, his claims would still be preempted under the Supreme Court's holdings in *Beasley v. Food Fair of North Carolina, Inc.*, 416 U.S. 653 (1974), and *Lodge 76, International Association of Machinists & Aerospace Workers, AFL-CIO v. Wisconsin Employment Relations Commission*, 427 U.S. 132 (1976). As an exhibit to their motion, Defendants included a photocopy of a retaliatory discharge claim Plaintiff made to the NLRB before filing the present complaint. Dated August 4, 2006, that claim describes Plaintiff's status as an "employee." Plaintiff argued in his response to the motion to dismiss that neither *Garmon*, *Beasley*, nor *Machinists* were dispositive. He instead contended that because his claims did not require interpretation of a collective bargaining agreement, preemption did not apply.[1]

**{4}** The district court held a hearing on Defendants' motion via conference call, and at its conclusion, the district court granted Defendants' motion on the basis of federal preemption. It found that each of Plaintiff's claims was based on Defendants alleged belief that Plaintiff "was engaged in union activity" and found that claims involving termination

---

[1] Plaintiff withdrew this NLRB complaint before it received consideration.

for such activities constituted a "federal issue."

{5}     Plaintiff now appeals the district court's dismissal of his complaint. He contends that because his claims for breach of contract, breach of the covenant of good faith and fair dealing, misrepresentation, wrongful termination, and tortious interference do not originate in a collective bargaining agreement, they do not implicate federal labor law and are therefore not preempted. Plaintiff contends that because these claims are based exclusively on state law, they should be resolved in state court. He also argues that there is no reason why his other allegations cannot remain viable, even assuming his claim for wrongful termination is preempted. As such, Plaintiff contends the district court was incorrect in refusing jurisdiction of all counts in his complaint without considering each individually. We consider these arguments below.

## DISCUSSION

### A.     Standard of Review

{6}     Motions to dismiss under Rule 1-012(B)(1) and (B)(6) are reviewed de novo. *See Holguin v. Tsay Corp.*, 2009-NMCA-056, ¶ 9, 146 N.M. 346, 210 P.3d 243 ("We review a district court's ruling on a Rule 1-012(B)(1) lack of subject matter jurisdiction issue de novo."); *Healthsource, Inc. v. X-Ray Assocs. of N.M., P.C.*, 2005-NMCA-097, ¶ 16, 138 N.M. 70, 116 P.3d 861 ("A district court's decision to dismiss a complaint for failure to state a claim [under Rule 1-012(B)(6)] is reviewed de novo."). In such cases, we test "the legal sufficiency of the complaint, not the factual allegations of the pleadings[,] which . . . the court must accept as true." *Healthsource, Inc.*, 2005-NMCA-097, ¶ 16. Likewise, this Court has applied a de novo standard to questions of federal preemption. *Weise v. Wash. Tru Solutions, L.L.C.*, 2008-NMCA-121, ¶ 9, 144 N.M. 867, 192 P.3d 1244; *Hadrych v. Hadrych*, 2007-NMCA-001, ¶ 5, 140 N.M. 829, 149 P.3d 593.

### B.     Federal Preemption Generally

{7}     Federal preemption derives from the Supremacy Clause of Article VI of the United States Constitution. *Largo v. Atchison, Topeka, & Santa Fe Ry. Co.*, 2002-NMCA-021, ¶ 6, 131 N.M. 621, 41 P.3d 347. The doctrine ensures uniformity in federal policies by protecting against the potentially dilutive effects of state legislation and judicial interpretation. *Id.* New Mexico's courts maintain a strong preference against the doctrine. *Id.* As a result, we apply it only in situations where Congress has announced a "clear and manifest purpose" for us to do so. *Montoya v. Mentor Corp.*, 1996-NMCA-067, ¶ 8, 122 N.M. 2, 919 P.2d 410 (internal quotation marks and citation omitted). Thus, congressional intent often arises in the heavily regulated landscape of federal labor law. Preemption may apply in a variety of ways and a few have been discussed by New Mexico's appellate courts in recent years. *See, e.g.*, *Mitchell-Carr v. McLendon*, 1999-NMSC-025, ¶¶ 33-34, 127 N.M. 282, 980 P.2d 65 (analyzing preemption under the NLRA and *Garmon*); *Weise*, 2008-NMCA-121, ¶¶ 7-9 (discussing preemption under both the NLRA and Section 301 of the

3

LMRA); *Kerschion v. Pub. Serv. Co. of N.M.*, 2002-NMCA-045, ¶¶ 6-8, 132 N.M. 119, 45 P.3d 59 (discussing preemption under Section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185(a) (2000)). This case requires us to consider three types of federal labor law preemption.

**{8}** First, under Section 301 of the LMRA, federal courts maintain exclusive jurisdiction over all disputes requiring interpretation of a collective bargaining agreement. *Kerschion*, 2002-NMCA-045, ¶ 6. Second, state courts may not adjudicate a matter that arguably falls under Sections 7 or 8 of the NLRA. Those sections prohibit several unfair labor practices, and Congress has vested the NLRB with exclusive jurisdiction to decide claims implicating them. *Dominguez v. Excell Agent Servs., L.L.C.*, 137 F. Supp. 2d 1264, 1265-66 (D.N.M. 2001).

**{9}** Third, in *Machinists*, the United States Supreme Court recognized that even though some labor practices fall outside the restrictions of Sections 7 and 8 of the NLRA, such practices were intentionally omitted by Congress for the benefit of parties engaged in labor negotiations. Practices of this type are "weapons" intended by Congress "to be controlled by the free play of economic forces." *Machinists*, 427 U.S. at 140, 147; *see Beasley*, 416 U.S. at 661-62 (discussing the claims of supervisors, though specifically excluded from protection under the NLRA, may not be decided by state courts in the interest of uniform national labor policy). As such, the NLRB maintains exclusive jurisdiction over them also. *Machinists*, 427 U.S. at 140, 147.

**{10}** We consider each type of preemption below. While Plaintiff is correct that his claims are not preempted by Section 301 of the LMRA, we hold that his claims still fail under *Garmon*, *Beasley* or *Machinists*, regardless of whether we consider him an employee or a supervisor under the NLRA.

## C.    Section 301 of the LMRA

**{11}** Section 301 preemption applies where the scope of the parties' relationship is defined by either a collective bargaining agreement "between an employer and a labor organization" or a contract among labor organizations. *Weise*, 2008-NMCA-121, ¶ 29; *see Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 412 (1988) (holding that state law claims for retaliatory discharge are preempted by Section 301 to the extent they require interpretation of a collective bargaining agreement). When a party's claim requires interpretation of such an agreement, the federal courts exercise exclusive jurisdiction. *Lingle*, 486 U.S. at 401, 413; *see Kerschion*, 2002-NMCA-045, ¶ 6 (stating that Section 301 preempts "claims raised in state court that require the interpretation or application of a collective-bargaining agreement"). Section 301 provides that:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . or between any such labor organizations, may be brought in any district court of the

4

United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). We have interpreted this language to forbid states from deciding matters under state law that are more appropriately analyzed under federal law as "duties assumed in collective-bargaining agreements." *Kerschion*, 2002-NMCA-045, ¶ 6 (quoting *Livadas v. Bradshaw*, 512 U.S. 107, 122-23 (1994)). This process ensures state law will not frustrate Congressional intent by determining "questions [related] to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement." *Id.*

{12} Plaintiff argues his claims are not preempted because his relationship with Defendants was not governed by a collective bargaining agreement. He cites *Mowry v. United Parcel Service*, 415 F.3d 1149 (10th Cir. 2005), *Garley v. Sandia Corp.*, 236 F.3d 1200 (10th Cir. 2001), and *Jarvis v. Nobel/Sysco Food Services Co.*, 985 F.2d 1419 (10th Cir. 1993), for support. To the extent Section 301 preemption might apply in this case, Plaintiff is correct. Neither the pleadings nor the record alert the court to the existence of a collective bargaining agreement or a labor union among the employees at Pay and Save. In this context, Section 301 does not preempt Plaintiff's claims.

{13} Yet, several types of federal preemption are applicable in the labor law context, and the absence of preemption under Section 301 does not void preemption from other sources. Plaintiff fails to analyze other types of preemption, specifically preemption under *Garmon*, *Beasley*, or *Machinists*. We now analyze *Garmon*, *Beasley*, and *Machinists* and conclude that Defendants' reading of the case law is consistent with our own.

## D.    *Garmon* **Preemption**

{14} In *Weise*, this Court analyzed *Garmon* preemption in detail. Under that doctrine, whenever a disputed activity "is arguably subject to Section 7 or Section 8 of the NLRA, the States as well as the federal courts must defer to the exclusive competence of the NLRB if the danger of state interference with national policy is to be averted." *Weise*, 2008-NMCA-121, ¶ 8 (alterations omitted) (internal quotation marks and citation omitted). In pertinent part, Section 7 of the NLRA provides that, "Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection." 29 U.S.C. § 157[2]; *see Weise*, 2008-NMCA-121, ¶ 8. Section 8 forbids several unfair labor practices, including: (1) interfering with an employee's rights under Section 7; (2) interfering with or dominating "the formation or administration of any labor organization"; (3) basing hiring decisions on

---

[2] We note that this language is repeated almost verbatim, in paragraph 24 of Plaintiff's complaint, asserting that Defendants' violating these principles is the basis for Plaintiff's wrongful termination claim.

union membership; (4) terminating an employee for filing charges or giving testimony under the NLRA; and (5) refusing to bargain collectively with union representatives. 29 U.S.C. § 158(a); *see Weise*, 2008-NMCA-121, ¶ 8 (stating that preemption precludes consideration of Section 7 activities of the NLRA by state courts).

**{15}** *Garmon* preemption functions to maintain a uniform national labor policy, but has several exceptions. *Weise*, 2008-NMCA-121, ¶ 9. For instance, states maintain jurisdiction over matters that present only "peripheral concern[s] to the NLRA, such as slander by an employer or retaliation for filing a worker's compensation claim." *Dominguez*, 137 F. Supp. 2d at 1266. States also maintain jurisdiction over claims involving acts of violence or disturbance, damage to property, and matters "so deeply rooted in local feeling and responsibility that [it] could not [be inferred] that Congress had deprived the States of the power to act." *Machinists*, 427 U.S. at 136 (internal quotation marks and citation omitted). The test for applying *Garmon* preemption has been described as "whether the substance of the dispute is the same under both the NLRA and state law." *Dominguez*, 137 F. Supp. 2d at 1266. If so, the dispute must be heard by the NLRB. *Id.* Even in cases where it is unclear whether the NLRA prohibits the activity, "courts are not the primary tribunals to adjudicate the issue; instead, such a determination must be left in the first instance to the NLRB." *Id.* at 1265.

> In other words, when an activity is arguably subject to Section 7 or 8 of the NLRA, state and federal courts must defer to the competence of the NLRB to avoid state interference with national labor policy. [The United States District Court] must first decide whether there is an arguable case for preemption; if there is, the Court must defer to the NLRB, and the Court may not entertain this case unless the NLRB has decided that the activity is not governed by Section 7 or 8.

*Id.* at 1265-66 (citation omitted).

**{16}** The analysis in *Dominguez* aligns closely with the facts of the case before us. In *Dominguez*, the plaintiff filed suit under state law against his employer, alleging he was terminated for pro-union beliefs and past union activities. *Id.* at 1265. The employer filed a motion to dismiss on the basis of NLRA preemption, which the court granted. *Id.* The court concluded that, "the conduct that forms the basis of [the p]laintiff's state-law claim is [the d]efendant's alleged anti-union conduct, firing [the p]laintiff for his pro-union history and comments. The public policy he relies on to support his claim is a purported policy against anti-union activity." *Id.* at 1266. As a result, "the public policy forming the basis of his retaliatory-discharge claim is exactly the same as the purposes behind the NLRA—to prevent anti-union actions by employers." *Id.* Therefore, the court held that "[the d]efendant's action in this case, firing [the p]laintiff due to his supposed pro-union views, is arguably a violation of the NLRA and therefore subject to the jurisdiction of the NLRB." *Id.*

**{17}** It is well-established that the protections of Sections 7 and 8 of the NLRA only cover

6

employees. 29 U.S.C. §§ 157-158; *see* 29 U.S.C. § 152(3) (1978) (defining "employee"); 29 U.S.C. § 152(11) (defining "supervisor"); *see Int'l Longshoremen's Ass'n, AFL-CIO v. Davis*, 476 U.S. 380, 394-95 (1986) (holding that in order for NLRA preemption to apply, the claimant must have "arguably" been an employee covered by the NLRA); *Beasley*, 416 U.S. at 661-62 (holding that Congress specifically excluded supervisors from the NLRA's protections). Plaintiff alleges he was terminated on suspicion that he was organizing a union. Accepting for the moment that Plaintiff was an employee and not a supervisor under the NLRA, we agree with the analysis in *Dominguez*. The NLRA prohibits firing employees for union-organizing activity. 29 U.S.C. §§ 157, 158(a)(4). Thus, assuming Plaintiff's status as an employee, his claims arguably fall within the purview of the NLRA and must first be heard by the NLRB.

{18}    Because supervisors are not protected by the NLRA, their claims are not subject to *Garmon* preemption. Plaintiff argues that because his complaint identifies his title as "produce manager," he should be considered a supervisor for purposes of the NLRA and his claims should not be preempted under *Garmon*. The term, supervisor, is specifically defined by the NLRA as someone who exercises the "authority . . . to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action." 29 U.S.C. § 152(11). Plaintiff's argument falls short of this definition. Plaintiff never refers to himself as a supervisor in his complaint. The title, "produce manager," says nothing of Plaintiff's functional authority over subordinate personnel, and Plaintiff provides no such information in his complaint. When Plaintiff previously filed a complaint with the NLRB in this case, he referred to himself specifically as "William Humphreys, an employee." These matters of record lead us to seriously question Plaintiff's alleged status as a supervisor under the NLRA.

{19}    Despite such disagreements over Plaintiff's authority *Dominguez* reminds us that "[w]here there is an arguable question as to whether an employee is a supervisor or an employee covered under the NLRA, that question must be submitted initially to the NLRB for a decision." 137 F. Supp. 2d at 1267. Nevertheless, even should we view Plaintiff as a supervisor, his claims are still preempted under *Beasley* and *Machinists*.

E.      **Preemption under *Beasley* and *Machinists***

{20}    In *Beasley*, the United States Supreme Court granted certiorari to consider whether state courts could hear claims brought by supervisors terminated for union activity. 416 U.S. at 654-55. It was undisputed that the plaintiffs qualified as supervisors under the NLRA, *id.* at 656, and as such, the plaintiffs argued the state had the authority to hear their claims. *Id.* at 658. The Court disagreed. It analyzed the NLRA and its amendments in detail and concluded that Congress specifically removed supervisors from the NLRA and intentionally exposed them to termination for union activity. *Id.* at 661-62. In doing so, the Court held that, "Congress' dominant purpose . . . was to redress a perceived imbalance in labor-management relationships that was found to arise from putting supervisors in the position of serving two masters with opposed interests." *Id.* Thus, the states have no jurisdiction to

7

consider claims of this type made by supervisors because to do so would "flout the national policy against compulsion upon employers . . . to treat supervisors as employees." *Id.* at 662.

**{21}** The Court decided *Machinists* two years later. 427 U.S. at 132. The Court observed that certain state involvement in labor regulation was nevertheless preempted even though it fell outside the NLRA. *Id.* at 140. Such involvement is preempted when Congress has expressed an intent "that the conduct involved be unregulated because [it should] be controlled by the free play of economic forces." *Id.* (internal quotation marks and citation omitted). In order to balance the parry and thrust of union-management negotiations, Congress has armed each with certain "weapons" to aid in the collective bargaining process. *Id.* at 147-48. Labor is no less powerful than management in this regard. *Id.* Thus, where Congress specifically leaves certain practices unregulated, states "may not prohibit [their use] or add to an employer's federal legal obligations in collective bargaining." *Id.* at 147 (internal quotation marks omitted).

**{22}** So, if Plaintiff was a supervisor, the holdings of *Beasley* and *Machinists* control. *See Bowlen v. ATR Coil Co., Inc.*, 553 N.E.2d 1262, 1264 (Ind. Ct. App. 1990) (holding that supervisor's state law claims were preempted); 190 A.L.R. Fed. 323 § 26 (2003) (discussing preemption of supervisor termination claims). *Beasley* instructs us that Congress has given employers the authority to terminate supervisors for their union activities. 416 U.S. at 661-62. Under *Machinists*, if Congress has expressed an intent to arm a party with such a weapon, state courts may not confiscate it. 427 U.S. at 147-51. Thus, assuming Plaintiff was a supervisor, his state law claims are preempted by the authority of the NLRB.

**F.     Severability**

**{23}** Finally, we reject Plaintiff's argument that his claims are severable for purposes of federal preemption on these facts. We agree with the well-established general principle that some counts in a complaint may be preempted while others may continue in state court. *See Garley*, 236 F.3d at 1214-15 (affirming dismissal of claims for breach of contract, breach of duty of good faith and fair dealing, and defamation because of preemption, but reversing dismissal of claims for alleged civil conspiracy and retaliation, and intentional infliction of emotional distress). But in this case, each count of Plaintiff's complaint grows from one universal core allegation:  Plaintiff was terminated by Defendants on suspicion that he sought to organize a union among the employees at their grocery store. This allegation remains constant despite the fact that five individual legal arguments, each relying on unique authorities, grow out from it. For example, in count one, Plaintiff argues breach of contract. In count four, he argues wrongful termination. If we ask, *why are Defendants guilty of these allegations*, the only reasonable conclusion we can reach is—*Defendants are guilty because they terminated Plaintiff on their belief that he engaged in organizing a union*. Such logic applies equally to each count in Plaintiff's complaint, and each count implicates the broader concerns of national labor policy. We therefore hold that all are uniformly precluded.

**CONCLUSION**

8

**{24}** We affirm the district court. While it is true that Section 301 of the LMRA poses no obstacle to Plaintiff's claims, each still fails under either *Garmon*, *Beasley* or *Machinists*, regardless of whether we consider Plaintiff an employee or a supervisor under the NLRA.

**{25}** **IT IS SO ORDERED.**

_____
**RODERICK T. KENNEDY, Judge**

**WE CONCUR**:

_____
**MICHAEL E. VIGIL, Judge**

**TIMOTHY L. GARCIA, Judge (specially concurring)**

**GARCIA, Judge (specially concurring).**

**{26}** I specially concur to emphasize that Plaintiff's claims were dismissed under Rule 1-012(B) without prejudice. Since the district court's order does not indicate whether Plaintiff's claims were dismissed with or without prejudice, we presume that Plaintiff's claims were dismissed without prejudice. *Cruz v. FTS Constr. Inc.*, 2006-NMCA-109, ¶ 27, 140 N.M. 284, 142 P.3d 365 (reasoning that where a district court's order does not specify whether a dismissal is with or without prejudice, the dismissal is considered to be without prejudice).

**{27}** As a result of the district court's dismissal of Plaintiff's claims without prejudice, Plaintiff still has a right to refile his state law claims if he can overcome issues regarding whether the NLRA preempts his state law claims and any statute of limitations issues. I agree with the majority that since the disputed activity is arguably subject to Section 7 or 8 of the NLRA, and there is an arguable question regarding whether Plaintiff is an employee covered under the NLRA, the proper forum to initially address those issues is before the NLRB. Majority Opinion, ¶¶ 16-19. As a result, the district court's dismissal of Plaintiff's claims without prejudice was appropriate. *See Dominguez*, 137 F. Supp. 2d at 1267 (concluding that where the plaintiff was arguably covered by provisions of the NLRA and his state law claim arguably fell within the core purposes of the NLRA, dismissal was appropriate because the state law claim was preempted by the NLRA).

**{28}** As the majority recognizes, if a disputed activity "is arguably subject to Section 7 or 8 of the NLRA, the States as well as the federal courts must defer to the exclusive [jurisdiction] of the NLRB if the danger of state interference with national policy is to be averted." Majority Opinion, ¶ 14; *Weise*, 2008-NMCA-121, ¶ 8. The United States Supreme Court has clarified that the proper procedure for a state court to determine whether

Section 7 or 8 of the NLRA preempts a state law claim is as follows: "[A] court first must decide whether there is an arguable case for [preemption]; if there is, it must defer to the [NLRB], and only if the [NLRB] decides that the conduct is not protected or prohibited may the court entertain the litigation." *Int'l Longshoremen's Ass'n v. Davis*, 476 U.S. 380, 397 (1986). Until the NLRB makes its initial determination of whether Plaintiff's activity is actually governed by Section 7 or 8 of the NLRA, it is uncertain whether the NRLA preempts any future state law claims by Plaintiff.

{29}     As a result, I agree that since there is an arguable case for preemption, the NLRB has exclusive initial jurisdiction to determine whether the disputed activity is subject to the NLRA. However, as *Davis* clarifies, a state court's initial determination that the NLRA arguably preempts state law does not necessarily preclude all future state law claims. Instead, if the NLRB determines that the conduct is not protected or prohibited under the NLRA, then a state court may entertain the litigation under the following circumstances: "(1) if the conduct in question is only a peripheral concern of the NLRA, or (2) if the state law claims touch interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, [a court] could not infer that Congress had deprived the States of the power to act." *Weise*, 2008-NMCA-121, ¶ 9 (internal quotation marks and citations omitted).

{30}     I concur with the ultimate result in this case and the dismissal of Plaintiff's claims without prejudice.

_____
**TIMOTHY L. GARCIA, Judge**

**Topic Index for *Humphries v. Pay & Save, Inc.*, Docket No. 29,197**

**AE**         **APPEAL AND ERROR**
AE-SR          Standard of Review

**EL**         **EMPLOYMENT LAW**
EL-TE          Termination of Employment
EL-UO          Union Organizing

**FL**         **FEDERAL LAW**
FL-PE          Pre-emption