**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: 2020-NMCA-008

Filing Date: September 24, 2019

No. A-1-CA-36190

ANGELA RUSS,

      Plaintiff-Appellee/Cross-Appellant,

v.

JEFFREY L. RUSS,

      Defendant-Appellant/Cross-Appellee,

and

NEW MEXICO HUMAN SERVICES
DEPARTMENT,

      Intervenor.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Debra Ramirez, District Judge**

Certiorari Granted, December 4, 2019, No. S-1-SC-37962. Released for Publication February 11, 2020.

New Mexico Family Law, PC
Amanda A. Aragon
Albuquerque, NM

for Appellee

Michelle Cortez
Albuquerque, NM

L. Helen Bennett
Albuquerque, NM

for Appellant

**OPINION**

**HANISEE, Judge.**

**{1}** Jeffrey Russ (Husband) appeals a district court order requiring reimbursement to Angela Russ (Wife), along with continued payments to her, of half of Husband's military retirement pay (Retirement Pay), pursuant to their Marital Settlement Agreement (MSA). At issue is what remains owed to Wife after Husband waived his Retirement Pay in exchange for receiving disability-based Combat Related Special Compensation (CRSC). Husband argues the United States Supreme Court's recent decision in *Howell v. Howell,* 137 S. Ct. 1400 (2017) preempts New Mexico case law and prohibits the district court from ordering Husband to reimburse Wife for waived Retirement Pay. Although we agree with Husband that our contrary decision in *Hadrych v. Hadrych*, 2007-NMCA-001, 140 N.M. 829, 149 P.3d 593, is no longer controlling precedent after *Howell*, we nonetheless conclude there to be sufficient reason under still-applicable New Mexico precedent to deny retroactive application of *Howell*. We therefore affirm on grounds different than those relied on by the district court.

**BACKGROUND**

**{2}** Husband and Wife married in 1993. Husband served in the military for the duration of the thirteen-year marriage. Upon their divorce in 2006 the parties entered into the MSA. Incorporated into the district court's final decree, the MSA stated that "as a compromise division of community assets," Husband and Wife agreed that Wife "receive 50 [percent] of [Husband's] disposable [R]etirement] [P]ay which was earned during the term of [their] marriage." Husband retired from the military and began receiving Retirement Pay effective January 1, 2011. On April 6, 2011, Wife filed a motion to amend the MSA to state instead that Wife would receive "50 [percent] of [Husband's] disposable [R]etirement [P]ay from date of retirement" so that the Defense Finance and Accounting Service would disperse her portion of the Retirement Pay. Without a response from Husband, the district court entered an order approving the change less than a week later.

**{3}** From January 2011 until May 2014, Husband received monthly Retirement Pay varying in amount from $1,578 to $1,638. Wife received her portion of Husband's Retirement Pay from August 2011 until April 2014. On May 1, 2014, Husband began receiving CRSC, as a consequence of his conversion of 100 percent of his Retirement Pay to CRSC, eliminating altogether Wife's monthly percentage of Husband's Retirement Pay under the MSA. On April 11, 2014, Wife filed an emergency motion to enforce the MSA requesting that the district court compel Husband to pay Wife the amount "she would be getting from her portion of [Husband's] [R]etirement [P]ay and to award her back pay from the time the retirement benefits ceased." On May 23, 2014, Husband also filed a motion to enforce the MSA, arguing that the language of the MSA should not have been modified, and that Wife is only entitled to half of Husband's Retirement Pay *during the marriage*, equaling 32.2 percent of Husband's monthly Retirement Pay, and that disbursements under Husband's CRSC benefits are his "separate property."

**{4}**     After a hearing on January 4, 2016, the district court determined that the issue of whether, under the MSA, Husband's CRSC benefits "converted from Retirement [Pay] to CRSC post-retirement[, remain] a community asset and [are] divisible" would be resolved following a trial on the merits. A bench trial took place on November 21, 2016, after which the district court entered its findings of fact, conclusions of law, and order of judgment (Order) on December 19, 2016. The district court found: (1) "[Wife] began receiving her vested portion of the [R]etirement [Pay]" in August 2011, Husband "cannot escape the responsibility of paying [Wife] what the parties agreed she earned during the time that he served in the military, no matter what name is attributed to that compensation or the source from which [Husband] pays [Wife]"; (3) principles of equity required that Wife receive 32.3 percent of the Retirement Pay in accordance with the amount she "*earned for the term of the marriage*"; (4) Husband owes Wife $22,243.09 in military retirement arrears,[1] and; (5) Wife owes Husband $8,738 in overpaid child support, which was used by the district court to offset the overall judgment against Husband. The district court then ordered Husband to pay Wife $529.07 a month—the sum of 32.3 percent of Husband's Retirement Pay—for as long as allowed by the Department of Defenses' Military Retirement Regulations, and an additional $500 a month to be paid toward the overall $13,505.09 judgment owed to Wife. Husband timely appealed the district court's order.

## DISCUSSION

**{5}**     On appeal, Husband argues that the United States Supreme Court decision in *Howell* abrogates this Court's past decisions in *Hadrych*, 2007-NMCA-001, and *Scheidel v. Scheidel*, 2000-NMCA-059, 129 N.M. 223, 4 P.3d 670. Both opinions held, in differing circumstances, that a court can order a military spouse to indemnify a non-military spouse for post-divorce decree military waivers of military retirement pay. Husband also argues that *Howell* should be applied retroactively in this case in accordance with the factors in *Beavers v. Johnson Controls World Services, Inc.*, 1994-NMSC-094, ¶ 23, 118 N.M. 391, 881 P.2d 1376, because (1) *Howell* did not create a new principle of law as federal statute and the United States Supreme Court's decision in *Mansell v. Mansell*, 490 U.S. 581 (1989) prohibited waived military retirement pay from categorization as community property by family courts; (2) limiting application of *Howell* would frustrate congressional intent as manifested within the Uniformed Services Former Spouses' Protection Act (USFSPA) 10 U.S.C. § 1408 (2018); and (3) equity favors retroactive application since hardship endured by non-military spouses is outweighed by hardship endured by military veterans receiving disability due to their own inability to support themselves.

**{6}**     Wife answers that *Howell* does not abrogate *Scheidel* because *Scheidel* addressed a contractual provision of indemnification; and the MSA contains a release clause analogous to an indemnity provision which protects Wife's contractual interest in

---

[1] The total amount of arrears includes $5,841.92 for Retirement Pay not paid to Wife before conversion from January 2011 to March 2014, along with $16,401.17 for April 2014 until December 2016 for amounts of Retirement Pay Wife would have received if Husband had not converted his Retirement Pay. Only the portion of the arrears involving payment not received after the conversion is at issue on appeal.

Husband's Retirement Pay and bars Husband from seeking application of *Howell* because to do so would deprive Wife of her share of the Retirement Pay. Wife further contends that *Howell* should not be applied retroactively because it applies a new principle of law by overruling past precedent and because retroactivity would burden the judicial system, economically devastate non-military spouses receiving military retirement payments, and unfairly reduce Wife's share of community property originally agreed to in the MSA. Wife does not rebut Husband's argument that *Howell* abrogated *Hadrych*.

## Standard of Review

**{7}** "[T]his Court has applied a de novo standard to questions of federal preemption." *Humphries v. Pay & Save, Inc.*, 2011-NMCA-035, ¶ 6, 150 N.M. 444, 261 P.3d 592. In addition, we affirm for reasons different than those relied on by the district court only in circumstances that are not unfair to the appellant. *Meiboom v. Watson*, 2000-NMSC-004, ¶ 20, 128 N.M. 536, 994 P.2d 1154 ("This Court may affirm a district court ruling on a ground not relied upon by the district court, but will not do so if reliance on the new ground would be unfair to appellant." (alteration, internal quotation marks, and citation omitted)).

## Federal Preemption

**{8}** Both parties address *Scheidel* and *Hadrych* in light of their factual similarity to the instant case. Husband argues that both cases are abrogated by *Howell*, whereas Wife argues that *Scheidel* is factually distinct from *Howell* thereby avoiding abrogation. Federal preemption only applies "in situations where Congress has announced a 'clear and manifest purpose' " for state application since New Mexico courts "maintain a strong preference against the doctrine." *Humphries*, 2011-NMCA-035, ¶ 7; *Lohman v. Daimler-Chrysler Corp.*, 2007-NMCA-100, ¶ 15, 142 N.M. 437, 166 P.3d 1091 ("Courts apply a strong presumption against preemption, particularly in areas of law that are traditionally left to state regulation."). Federal law preempts "the application of state community property law to [R]etirement [P]ay." *Howell,* 137 S. Ct. at 1403 (internal quotation marks and citation omitted). The USFSPA states that a state "may treat [veterans'] disposable retired pay[,]" § 1408(c)(1), as divisible property upon divorce, but expressly excludes from the definition of disposable retired pay any amount "deducted from the retired pay . . . as a result of a waiver . . . required by law in order to receive [disability benefits]." § 1408(a)(4)(A)(ii). As such, and based upon our thorough review of *Howell*, we have determined only the holding in *Hadrych* must be considered incongruent with the holding in *Howell*. We explain.

**{9}** During the pendency of this appeal, the United States Supreme Court issued *Howell*. In *Howell*, a veteran husband "waived a share of the retirement pay in order to receive nontaxable disability benefits from the Federal Government[,]" resulting in a reduction in his ex-spouse's share of his retirement payment. 137 S. Ct. at 1402, 1404. The parties were divorced before the husband's retirement, at which time the non-veteran wife was awarded 50 percent of the husband's military retirement as her sole

and separate property in the divorce decree. *Id.* at 1404. Thirteen years after retirement, the husband was found to be 20 percent disabled and elected to receive disability benefits, consequently waiving approximately $250 per month of his military retirement pay. *Id.* The husband's waiver resulted in the wife receiving $125 less per month from his retirement pay. *Id.* Upon a motion to enforce the preexisting judgment by the wife, the lower state court "held that the original divorce decree had given [the wife] a vested interest in the prewaiver amount of that pay, and ordered [the husband] to ensure [the wife] receive her full 50 [percent] of the military retirement without regard for the disability." *Id.* (internal quotation marks and citation omitted). The Supreme Court reversed, holding that a state court cannot "subsequently increase, pro rata, the amount the divorced spouse receives each month from the veteran's retirement pay in order to indemnify the divorced spouse for the loss caused by the veteran's waiver[.]" *Id.* at 1402. The Court concluded that its previous decision in *Mansell*, holding that "federal law completely pre[]empts the [s]tates from treating waived military retirement pay as divisible community property[,]" determined the outcome of the case. *Howell*, 137 S. Ct. at 1405. The Court noted the rationale of the lower court, observing that "like several other state courts, [the lower court] emphasized the fact that the veteran's waiver in *Mansell* took place before the divorce proceeding[,]" whereas the waiver in *Howell* took place "several years after the divorce proceedings." *Howell*, 137 S. Ct. at 1405. Nonetheless, the Supreme Court determined that factual difference does not render *Mansell* inapplicable. *Howell*, 137 S. Ct. 1405. It reasoned that the state court did not (and most likely legally could not) control the "future contingency" of the wife's share of the military retirement pay, and stated "[t]he existence of that contingency meant that the value of [the wife's] share of military retirement pay was possibly worth less— perhaps less than [the wife] and others thought—at the time of the divorce." *Id.* The Court also reasoned that the state court did not have the authority to "vest" the wife with interest in the waivable portion under 38 USC § 5301(a)(1) (2018), because disability benefits are not assignable. The Court further clarified that even if the wife was "vested" with a right to half of the husband's retirement pay, such an interest is at most "contingent, depending for its amount on a subsequent condition: [the husband]'s possible waiver of that pay." *Howell*, 137 S. Ct. at 1406. The Court also held "[r]egardless of their form . . . reimbursement and indemnification orders displace the federal rule and stand as an obstacle to the accomplishment and execution of the purposes and objections of Congress. All such orders are thus pre-empted." *Id.* While the Court recognized "the hardship that congressional pre-emption can sometimes work on divorcing spouses[,]" it stated that a state court may take into account the contingency of Retirement Pay and consider potential reductions in value when determining a family's assets. *Id.*

{10}   In *Hadrych*, decided long before *Howell*, we found it equitable to "require [the h]usband to be responsible for the reduction in [the w]ife's benefits" since "although [the h]usband is deemed disabled by the military," he was employed and earning additional income each month. Hadrych, 2007-NMCA-001, ¶ 15. The final decree awarded the wife 50 percent of the husband's retirement pay "attributable to the period of time the parties were married." *Id.* ¶ 10 (internal quotation marks and citation omitted). There was no marital settlement agreement and therefore "no indemnity provision or non-

alteration provision[,]" thereby distinguishing the case from *Scheidel*.[2] *Haydrych*, 2007-NMCA-001, ¶ 9. We held that "the [district] court could act to enforce and preserve [the w]ife's right to benefits established by the final decree" because "we cannot accept the inequity and unfairness that results when one party is allowed to unilaterally reduce the other's benefits established either under an agreement or a final decree." *Id.* ¶ 11. We also interpreted *Mansell* to "only appl[y] to the division of payments at the time of divorce and [to] not preclude a court from ordering the spouse who has adversely impacted the other spouse, by converting retirement benefits to disability benefits, to pay the other spouse directly." *Haydrych*, 2007-NMCA-001, ¶ 13.

**{11}** In light of *Howell*, relief under *Hadrych* is no longer proper. A state court's capacity to order reimbursement or indemnification of post-divorce waived retirement pay in an effort to restore past marital settlement agreements or its own past order dividing marital assets is expressly preempted under *Howell,* and therefore, impermissible in New Mexico. *See Howell,* 137 S. Ct. at 1406.

**The District Court's Relief Was Improper Under *Howell***

**{12}** *Howell* disallows the relief ordered by the district court—by application of *Hadrych*—providing Wife with indemnity for the waived amounts of Retirement Pay. The facts in this case are analogous to the facts in both *Howell* and *Hadrych*: (1) Retirement Pay was awarded to Wife as a form of divisible community property; (2) the divorce decree was entered, and then years later, Husband converted his Retirement Pay to CRSC;[3] (3) Wife stopped receiving monthly payments of Retirement Pay after Husband began receiving CRSC; and (4) at trial, Wife claimed she was entitled to continue receiving the original amount of Retirement Pay agreed to by both parties in the MSA despite the waiver. Wife attempts to distinguish her case from *Hadrych* and *Howell* by stating that the MSA contains a release clause that functions as an indemnification

---

[2]In *Scheidel*, this Court held that "federal law does not prohibit state courts from enforcing indemnity provisions which ensure the payment of a minimum sum to a non-military spouse as his or her share of a community pension, provided that veterans' disability benefits are not specified as the source of such payments." 2000-NMCA-059, ¶ 12. The marital settlement agreement in *Scheidel* stated the husband could not "voluntarily modify his military retirement pay in such a manner as to cause [the w]ife's share to be diminished or reduced," and if such a reduction occurs, that the husband would be responsible for paying the wife the difference in payment. *Id.* ¶ 2 (internal quotation marks omitted). The husband was 30 percent disabled at the time of the divorce, and eventually received a 100 percent disability rating as a result of worsening health conditions. *Id.* ¶ 3. Then, upon the wife's motion, the district court "determined that [the h]usband had violated the terms of the MSA by applying for and receiving a higher disability rating, and required [the h]usband to indemnify [the w]ife for her losses." *Id.* ¶ 4. We disagreed with the husband's argument that payment to the wife would amount to "an impermissible distribution of disability benefits to [the w]ife" under *Mansell*, and explained that because the husband was "free to satisfy an indemnity obligation from any source," that "enforcement of indemnity provisions does not result in the impermissible division of disability benefits." *Scheidel*, 2000-NMCA-059, ¶¶ 7, 8-9.
3Whereas the military spouses in *Howell* and *Hadrych* both waived Retirement Pay in order to receive disability benefits and Husband here converted his Retirement Pay to CRSC, we treat both circumstances the same. *See In re Marriage of Cassinelli*, 229 Cal. Rptr. 3d 801, 808 (2018) ("Because CRSC is not retired pay—just as veteran's disability benefits are not retired pay—under FUSFSPA as construed in *Mansell*, a state court does not have jurisdiction to treat CRSC as community property.").

provision, much like the indemnity provision in *Scheidel*.[4] However, the clause in the MSA cited by Wife is not an indemnity provision because it contains no language requiring Husband to reimburse wife in any fashion. Wife's attempts to analogize to *Scheidel* are therefore unconvincing. This case is not factually similar to *Scheidel* because in *Scheidel* there was a clear provision in the MSA requiring husband to reimburse wife for any underpayment of funds as agreed upon by the parties. *Scheidel* does not apply.

**{13}** Because of the close similarity between the facts of this case, *Howell,* and *Hadrych*, the district court's ruling is inconsistent with the holding of *Howell*. First, the district court found that Wife's interest in the Retirement Pay was "vested" after Husband retired. Even if Wife's interest in the Retirement Pay "vested" when Husband retired, her interest was contingent and dependent upon Husband's possible waiver of Retirement Pay in exchange for disability benefits. *See Howell*, 137 S. Ct. at 1405-06 ("State Courts cannot 'vest' that which (under governing federal law) they lack the authority to give."). Second, the district court ordered Husband pay Wife what they agreed "she earned during the time that he served in the military, no matter what name is attributed to that compensation or the source from which he pays her." The Court in *Howell*, however, made clear that state court orders of reimbursement or indemnification for waived Retirement Pay are preempted. 137 S. Ct. at 1406.

### *Howell* Does Not Apply Retroactively in New Mexico

**{14}** Because *Howell* was decided a year after the district court entered its order in 2016, we next consider whether *Howell* should apply retroactively under New Mexico law. The United States Supreme Court did not explicitly state whether its opinion in *Howell* should apply retroactively or prospectively. *See Howell* 137 S. Ct. 1400. "When such a statement is lacking, there is a presumption of retroactivity for a new rule imposed by a judicial decision in a civil case." *Edenburn v. N.M. Dep't of Health*, 2013-NMCA-045, ¶ 27, 299 P.3d 424 (internal quotation marks and citation omitted). "This presumption, however, may be overcome by a sufficiently weighty combination of one or more factors." *Id.* (omission, internal quotation marks, and citation omitted). These factors, adopted from *Chevron Oil Co. v. Huson,* 404 U.S. 97 (1971), include: (1) whether a new principle of law is established "either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed"; (2) whether "retrospective operation will further or retard its operation" when "weigh[ing] the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect," and; (3) whether "substantial inequitable results" could occur if retroactivity is applied given that "there is ample basis in our cases for avoiding the injustice or hardship by a holding of nonretroactivity." *Beavers*, 1994-NMSC-094, ¶ 23 (internal quotation marks and citation omitted).

---

[4] Were Wife's argument correct and such a provision present in the MSA, we would have to resolve *Scheidel's* remaining applicability post-*Howell*. Because such a circumstance is not here the case, we decline to address *Scheidel's* remaining place in our jurisprudence. *See Insure N.M., LLC v. McGonigle*, 2000-NMCA-018, ¶ 27, 128 N.M. 611, 995 P.2d 1053 ("We will not issue an advisory opinion in the absence of a justiciable issue.").

**{15}** New Mexico precedents addressing closely-related retroactivity questions guide our analysis. In *Whenry v. Whenry*, 1982-NMSC-067, 98 N.M. 737, 652 P.2d 1188, at issue was whether to retroactively apply *McCarty v. McCarty*, 453 U.S. 210 (1981), *superceded in statute as stated in Howell*, 137 S. Ct. 1400, in which the United States Supreme Court held that federal law precludes state courts from treating military retirement pay as community property. Applying the three-factor *Beavers* test, our Supreme Court held that *McCarty* did not apply retroactively. The Court concluded first that *McCarty* "clearly establish[ed] a new principle of law" because it overruled New Mexico precedent. *Whenry*, 1982-NMSC-067, ¶ 8. The Court reasoned that "[p]roperty settlements have been agreed upon based on [the overruled New Mexico] precedent[,]" and that in light of this "extensive reliance," retroactive application of *McCarty* would have been "unjust and inequitable." *Whenry*, 1982-NMSC-067, ¶ 8. Turning to the second factor, the Court recognized that the federal interest at stake in not reducing retirement benefits was to maintain the incentive for enlistment and re-enlistment. *Id.* ¶ 9. Because prospective application of *McCarty* would "guarantee them full entitlement of retirement benefits[,]" prospective application of *McCarty* would not reduce "the incentive to enlist or re-enlist." *Whenry*, 1982-NMSC-067, ¶ 9. Addressing the third factor, the Court observed that "in no other area of law is the need for stability and finality greater than in marriage and family law," and the Court concluded that "there is ample basis for avoiding the injustice and hardships which would result in applying a rule of retroactive application." *Id.* ¶¶ 10, 11.

**{16}** Similarly, in *Toupal v. Toupal*, 1990-NMCA-027, 109 N.M. 774, 790 P.2d 1055, this Court held that *Mansell*, on which *Howell* relies, should not apply retroactively. *Mansell* held that "the USFSPA preempts states from treating military disability retirement benefits as community property." *Toupal*, 1990-NMCA-027, ¶ 1. In *Toupal*, a husband moved to modify and, under Rule 1-060(B), to reopen a district court's judgment dividing his disability retirement benefits as community property based on *Mansell*. *Toupal*, 1990-NMCA-027, ¶ 1. Following the lead of our Supreme Court in *Whenry*, we applied the three *Beavers* factors and determined: (1) "*Mansell* created new law by overruling prior New Mexico cases holding that disability retirement pay may be treated as community property"; (2) "the *Mansell* decision did not espouse any legitimate governmental interest to be served by preventing states from treating disability retirement as community property, so refusal to give the decision retroactive effect will not impinge on any important purpose furthered by the decision"[;] and (3) if applied retroactively, the judicial system could be inundated with Rule 1-060(B) petitions from military retirees and "[e]x-spouses who have been receiving such payments, in reliance on established New Mexico case law, will face the prospect of repaying those amounts with diminished resources." *Toupal*, 1990-NMCA-027, ¶ 6.

**{17}** Our analysis is similar to the analyses in both *Whenry* and *Toupal*. First, *Howell* establishes a new principle of law by abrogating established New Mexico precedent that protects a wife's interest, awarded by decree, in her husband's military retirement benefits such that the husband was responsible for indemnifying the wife upon his elected reduction in those benefits. *See Hadrych*, 2007-NMCA-001, ¶¶ 10, 15. Even though *Howell* states its reliance on *Mansell* (which predates *Hadrych*) in reaching its

holding, *see Howell*, 137 S. Ct. at 1405, *Howell* cautioned that it is improper for state courts to distinguish *Mansell* by "emphasiz[ing] the fact that the veteran's waiver in *Mansell* took place before the divorce proceeding; [whereas] the waiver [in the state cases] took place several years after the divorce proceedings." *Howell*, 137 S. Ct. at 1405. This Court made that very distinction in *Hadrych*. 2007-NMCA-001, ¶ 13 ("We join other jurisdictions that have held that *Mansell* only applies to the division of payments at the time of divorce and does not preclude a court from ordering the spouse who has adversely impacted the other spouse, by converting retirement benefits to disability benefits, to pay the other spouse directly."). Just as retroactive application of *McCarty* would have been "unjust and inequitable" because of litigants' "extensive reliance on that prior precedent," *Whenry*, 1982-NMSC-067, ¶ 8, retroactive application of *Howell* would unjustly and inequitably undo significant provisions of marital settlement agreements that were based on New Mexico precedent, including the MSA in this case.

**{18}** Second, the congressional purposes of Retirement Pay as an "inducement for enlistment or re-enlistment," *McCarty*, 453 U.S. at 234, will not be substantially harmed if *Howell* is not applied retroactively since future enlistees or re-enlistees will still benefit from prospective application of the rule as established in *Howell*. Our analysis of the second factor mirrors our Supreme Court's analysis of this factor in *Whenry*,1982-NMSC-067, ¶ 9.

**{19}** Third, retroactive application could produce inequitable results for ex-spouses who rely upon the amount of Retirement Pay agreed to by both parties and relied on by the district court in approving the MSA's division of community assets, as a source of income. *See Toupal,* 1990-NMCA-027, ¶ 6. In addition, New Mexico's judicial system could experience an influx of petitions to re-open divorce cases that have long since been settled if retroactivity is applied. *See id.* Reopening this category of cases abruptly in response to a change in law could disturb "the need for stability and finality" in marriage and family law, of which "the relitigation of property interests long after the issues were supposedly settled would merely serve to reopen old wounds and create new ones." *Whenry*, 1982-NMSC-067, ¶ 10 (internal quotation marks and citation omitted).

**{20}** Weighing the inequities that result from retroactive application in light of the *Beavers* factors, we conclude that the presumption of retroactive application is here overcome. We hold that *Howell* does not apply retroactively in New Mexico.

**CONCLUSION**

**{21}** Based upon the reasons set forth in this opinion, we affirm.

**{22}  IT IS SO ORDERED.**

**J. MILES HANISEE, Judge**

**WE CONCUR:**

**KRISTINA BOGARDUS, Judge**

**ZACHARAY A. IVES, Judge**